JAMES STEVENS, APPELLANT, *v.* ROYAL GLADDING AND ISAAC T. PROUD.

Whether patent-rights and copyrights, held under the laws of the United States, are subject to seizure and sale on execution, is a question upon which the court does not express an opinion in the present case.

Stevens v. Gladding et al.

The seizure and sale, under execution, of "one copperplate for the map of the State of Rhode Island," did not carry with it the right to print and publish the map.

It is distinguishable from a voluntary sale of a plate by the owner thereof.

The ownership of a plate and the ownership of the copyright are distinct species of property; and the plate may be used without infringing upon the copyright of printing and publishing the map.

But the penalties imposed by the 7th section of the act of congress, passed on the 3d of February, 1831, namely, the forfeiture of the printed copies and the sum of one dollar for each sheet unlawfully printed, cannot be enforced in a court of equity.

Under a prayer for general relief, the court can decree for an account of profits. This right is inciden to the right to an injunction in copy and patent-right cases.

THIS was an appeal from the circuit court of the United States for the district of Rhode Island.

It was a branch of the case of Stevens v. Cady, reported in 14 How. 528, and the difference between the two cases is stated in the opinion of the court.

The decree of the circuit court was as follows:—

### Decree.

This cause came on to be heard on the bill, answer, replication, depositions, and other papers in the case, and after the hearing, it is ordered by the court that the following entry be made on the minutes in relation to the same:—

"The court differ in opinion as to the effect of the sale of the copperplate, but agree that injunction cannot issue without a return of the money paid for the plate."

And afterwards, at the same term, Mr. Stevens having the election to return the price of the plate or not, elected not to return the same, upon which the respondents move that the bill be dismissed, which is dismissed as follows:—

This cause having been heard on the bill, answer, and other pleadings therein, and the complainant having refused to return the price of the plate of the map in question as required by the court:

It is now, on motion of the respondents, and by the consideration of the court, ordered, adjudged, and decreed, that the said bill be and the same is hereby dismissed, with costs.

November term, A. D. 1849.

From this decree, Stevens appealed to this court.

It was submitted on a printed argument by the appellant, and argued by *Mr. Ames*, for the appellees.

*Mr. Ames* made the following points:—

1. The 7th section of the act of congress, approved February 3, 1831, entitled "An act to amend the several acts respecting copyrights," (4 Stats. at Large, 438,) inflicting forfeiture and penalties upc.` those who shall sell any map, &c., "without the

consent of the proprietor or proprietors of the copyright thereof, first obtained in writing, signed in the presence of two credible witnesses," applies only to persons claiming the right of sale by act of party, and not to those claiming and proving such right by act or operation of law. 4 Stats. at Large, 435, § 1; Hesse *v.* Stevenson, 3 Bos. and Pul. 565, 578; Bloxam *v.* Elsee, 1 C. and P. 578; S. C. 11 Eng. C. L. R. 468; S. C. in Error, 6 B. and C. 69; S. C. 13 Eng. C. L. R. 133; Cartwright *v.* Amatt, 2 Bos. and Pul. 43; Sawin et al. *v.* Guild, 1 Gallison, 485; Wilson *v.* Rousseau, 4 How. 646; Webster on Patents, 21–23, 82, n. *n.*; Godson on Patents and Copyright, 2d ed. 219, 221, 377, 430; 2 Renouard Traité des Droits d'Auteurs, ch. 3, § 4, arts. 204, 205, p. 348, and onwards.

2. Copyrights and patent-rights are, by the law of England, and in conformity to the principles of justice and policy prevailing there, as well as in countries of the civil law, liable, as goods and chattels, to the payment of the debts of the authors or inventors who may hold them. As goods and chattels they pass to assignees in bankruptcy, and to provisional assignees in insolvency, as "the assignees" or "representatives" of the bankrupt or insolvent author or inventor; and, both in England and in France, may be seized and sold on execution or decrees of seizure issued against him. Hesse *v.* Stevenson, *supra;* Bloxam *v.* Elsee, *supra;* Cartwright *v.* Amatt, *supra;* Mary York *v.* Twine, Cro. Jac. 78; Sewall, Office of Sheriff, 225, 46 Law Lib.; Webster on Patents, 21–23; Godson on Patents and Copyright, 219, 221, incl. 430; Renouard Traité des Droits d Auteurs, 348, 349, &c., ch. 3, § 4, arts. 204, 205.

3. After an author has printed his book, or map, in performance of the contract of copyright with the public, and it has thus passed from the condition of a thought or conception still under deliberation, as well as after a patented machine has been completed and sold by the inventor, in fulfilment of the contract of his letters-patent, and he has, in any manifest form, clothed his incorporeal right with a valuable corporeal substance, and, abstracting other values for the purpose, has brought it into the condition of property, in the nature of a personal, tangible good or chattel, he thereby has made the right to use and sell the same, appurtenant thereto; and public policy, common honesty, attention to the true interests of the author or proprietor of the copyright, as well as of his creditors, and every legal analogy, require that the two should not be dissevered for the purpose of enabling him to defeat the rights of his creditors, sought through the remedies provided by law. Wilson *v.* Rousseau, 4 How. 682, 684; Bloomer *v.* McQuewan et al. 14 Ib. 549, 550, 553,

38*

554; 2 Renouard Traité des Droits d'Auteurs, 348, and onwards, ch. 3, § 4, arts. 204, 205.

4. That the engraving of a map upon copperplate brings it fairly within the principle and policy, that the proprietor having made the right to use the plate appurtenant to the same, and to the right of property therein, such right will pass with the right of property in the plate, whenever that right passes by act or operation of law in forms appropriate to such act or operation.

5. That, at least, the condition of relief annexed by the court below was, under the circumstances of this case, a perfectly equitable one, and, upon non-compliance therewith by the complainant, the bill ought to have been, as it was, dismissed with costs.  Origin of rule imposing terms of relief on complainant. 1 Spence, Equitable Jurisdiction of Chancery, 216, 422, 423, and notes.  Though equity cannot relieve against common law or statute penalties and forfeitures, (Peacy *v.* Duke of Somerset, 1 Stra. 447; Keating *v.* Sparrow, 1 Ball and Beatty, 372, 373, 374,) yet it does, in the case of usurious bonds and instruments, grant relief against them only on condition of payment of the principal and legal interest of the amount borrowed; in other words, only upon waiver of the statute forfeitures.  1 Story's Eq. Jurisp. 64 c. and cases cited; Rogers *v.* Rathbone, 1 Johns. Ch. R. 365; Tupper *v.* Powell, Ib. 439; Morgan *v.* Schermerhorn, 1 Paige, 544; Livingston *v.* Harris, 3 Ib. 528; Campbell *v.* Morrison, 7 Ib. 158; Judd *v.* Seaver, 8 Ib. 548; Cole *v.* Savage, 10 Ib. 583.

Mr. Justice CURTIS delivered the opinion of the court.

The appellant filed his bill in the circuit court of the United States for the district of Rhode Island, to restrain the defendants from printing and publishing a map of that State, whereof he claimed to be the exclusive proprietor, under the act of congress of February 3, 1831, concerning copyrights of maps, &c. The defendants admit that they have sold such maps, but allege that a copperplate, owned by the plaintiff, was duly sold on an execution which issued on a judgment recovered against the plaintiff, in the court of common pleas for the county of Bristol, in the State of Massachusetts, and that one Isaac H. Cady was the purchaser of the plate under that sale; that Cady has used the plate to print the said maps, and the defendants have sold them ; and they insist that, by the purchase of the copperplate, Cady acquired the right to print maps therewith, and to publish and sell them ; and that, therefore, the defendants have not infringed on any exclusive right of the complainants.

By reference to the case of Stevens *v.* Cady, reported in 14 How. 528, it will be seen that the same title, now asserted by

these defendants, was tried on that case, between the complainant and Cady. But, as is stated in the report of that case, no counsel then appeared or was heard in support of Cady's title; and Mr. Justice Woodbury, who sat in the cause in the circuit court, having deceased, this court was not apprised of the grounds and reasons on which the decree of that court dismissing the bill rested; and when this cause was called, counsel having appeared and desired to be heard, though he frankly avowed that the question passed on in the former case was the only one which could be raised, the court readily assented, and, having now considered the argument of the respondent's counsel, the court directs me to state its opinion in the cause.

The positions assumed by the respondent's counsel are, that copy and patent-rights are subject to seizure and sale on execution; and that, whenever the owner of a copyright of a map causes a plate to be made which is capable of no beneficial use except to print his map, he thereby annexes to the plate the right to use it for printing that map, and also the right to publish and sell the copies when printed; and that when the plate is sold on execution, these rights pass with the plate, and as incidents or accessories thereto, though no mention is made of them in the sale.

There would certainly be great difficulty in assenting to the proposition that patent and copyrights, held under the laws of the United States, are subject to seizure and sale on execution. Not to repeat what is said on this subject, in 14 How. 531, it may be added, that these incorporeal rights do not exist in any particular State or district; they are coextensive with the United States. There is nothing in any act of congress, or in the nature of the rights themselves, to give them locality anywhere so as to subject them to the process of courts having jurisdiction limited by the lines of States and districts. That an execution out of the court of common pleas for the county of Bristol, in the State of Massachusetts, can be levied on an incorporeal right subsisting in Rhode Island, or New York, will hardly be pretended. That by the levy of such an execution, the entire right could be divided, and so much of it as might be exercised within the county of Bristol, sold, would be a position subject to much difficulty.

These are important questions, on which we do not find it necessary to express an opinion, because, in this case, neither the copyright, as such, nor any part of it, was attempted to be sold. The return of the officer on the execution is, that he seized and sold " one copperplate for the map of the State of Rhode Island." The defendants must, therefore, stand upon the second position assumed by their counsel, that the right to

print and publish the map passed by the execution sale with the plate.

There are no special facts in this case to distinguish it from any case of a sale on execution of copper or stereotype plates. It appears that the plaintiff owned the plate; whether he made it, or caused it to be made, or purchased it after it had been made, does not appear.

Nor should the case be confounded with one where the owner of copper or stereotype plate sells them. What rights would pass by such a sale would depend on the intentions of its parties, to be gathered from their contract and its attendant circumstances. In this case, the owner of the copyright made no contract of sale, and necessarily had no intention respecting its subject-matter.

The sole question is, whether the mere fact that the plaintiff owned the plate, attached to it the right to print and publish the map, so that this right passed with the plate by a sale on execution.

And upon this question of the annexation of the copyright to the plate it is to be observed, first, that there is no necessary connection between them. They are distinct subjects of property, each capable of existing, and being owned and transferred, independent of the other. It was lawful for any one to make, own, and sell this copperplate. The manufacture of stereotype plates is an established business, and the ownership of the plates of a book under copyright may be, and doubtless in practice is, separated from the ownership of the copyright. If an execution against a stereotype founder were levied on such plates, which he had made for an author and not delivered, the title to those plates would be passed by the execution sale, and the purchaser might sell them, but clearly he could not print and publish the book for which they were made. The right to print and publish is therefore not necessarily annexed to the plate, nor parcel of it.

Neither is the plate the principal thing, and the right to print and publish an incident or accessory thereof. It might be more plausibly said that the plate is an incident or accessory of the right; because the sole object of the existence of the plate is as a means to exercise and enjoy the right to print and publish.

Nor does the rule that he who grants a thing, grants impliedly what is essential to the beneficial use of that thing, apply to this case. A press, and paper, and ink, are essential to the beneficial use of a copperplate. But it would hardly be contended that the sale of a copperplate passed a press, and paper, and ink, as incidents of the plate, because necessary to its enjoyment.

The sale of a copperplate passes the right to such lawful use

thereof as the purchaser can make, by reason of the ownership of the thing he has bought; but not the right to a use thereof, by reason of the ownership of something else which he has not bought, and which belongs to a third person. If he has not acquired a press, or paper, or ink, he cannot use his plate for printing, because each of these kinds of property is necessary to enable him to use it for that purpose. So, if he has not acquired the right to print the map, he cannot use his plate for that purpose, because he has not made himself the owner of something as necessary to printing as paper and ink, or as clearly a distinct species of property as either of those articles. He may make any other use of the plate of which it is susceptible. He may keep it till the limited time, during which the exclusive right exists, shall have expired, and then use it to print maps. He may sell it to another, who has the right to print and publish, but he can no more use that right of property than he can use a press, or paper, which belongs to a third person.

The cases mentioned at the bar, in which incorporeal rights have been held to pass with corporeal property, do not apply.

By the levy of an execution on a mill, the incorporeal rights actually annexed to the mill, and necessary to its use, pass with the mill. So does what is parcel of the mill, though temporarily removed from it — as a mill-stone, which has been taken from its place to be picked. These, and many other such cases, are collected in Broome's Legal Maxims, 198, 205.

But the right in question is not parcel of the plate levied on, nor a right merely appendant or appurtenant thereto; but a distinct and independent property, subsisting in grant from the government of the United States, not annexed to any other thing, either by the act of its owner or by operation of law.

For these reasons, as well as those stated in 14 How., our conclusion is, that the mere ownership of a copperplate of a map, by the owner of the copyright, does not attach to the plate the exclusive right of printing and publishing the map, held under the act of congress, or any part thereof; but the incorporeal right subsists wholly separate from and independent of the plate, and does not pass with it by a sale thereof on execution.

The next question is, whether the complainant can have a decree in accordance with the prayer of his bill, for the penalties imposed by the 7th section of the act of February 3, 1831. The bill prays specifically for a decree for these penalties. We speak of the forfeiture of the printed copies, as well as of the sum of one dollar for each sheet unlawfully printed, as penalties; for, under the laws of the United States, it is clear that the complainant can have no title to either of them, except by way of penalty.

There being no common law of copyright in this country, whatever rights are possessed by the proprietor of the copyright must be derived from some grant thereof, in some act of congress, either *nominatim* or by a satisfactory implication; and, looking to the act of congress applicable to this subject-matter, it appears that the rights claimed by this bill are expressly conferred by way of forfeiture. Its language is: "Then such offender shall forfeit the plate or plates on which such map, &c., shall be copied, and also all and every sheet thereof so copied or printed as aforesaid, to the proprietor or proprietors of the copyright thereof; and shall further forfeit one dollar for every sheet of such map, &c., which may be found in his or their possession, printed, &c., contrary to the true intent and meaning of this act; the one moiety thereof to the proprietor or proprietors, and the other moiety to the use of the United States, to be recovered in any court having competent jurisdiction thereof."

In the case of Colburn *v.* Simms, 2 Hare, 554, Mr. Vice-Chancellor Wigram came to the conclusion, that since the decision of the house of lords in the case of Miller *v.* Taylor, the right to a decree for the delivery up of copies must be rested by the complainant upon some statute provision; and that inasmuch as courts of equity do not enforce forfeitures by an exercise of their ordinary jurisdiction, such a jurisdiction also must be derived from an act of parliament. And though the 8th section of the act of 1 and 2 Vict. c. 59, as well as the preceding act of 54 Geo. III., c. 156, § 4, allows the forfeited copies to be recovered in " any court of record in which an action at law, or a suit in equity, shall be commenced by such author or authors, or other proprietor or proprietors," &c.; yet it was admitted, in Colburn *v.* Simms, that no such order had ever been made, *in invitum*, in a court of equity. It is a significant fact that congress, in legislating on this subject, though manifestly acquainted with the phraseology of the act of Geo. III., and though in some particulars it adopted that phraseology, yet omitted to confer upon courts of equity power to enforce either of the forfeitures provided for, but left them to be recovered " in any court having competent jurisdiction thereof." And the only equitable jurisdiction, as to copyright, conferred upon the courts of the United States, is by the act of February 15, 1819, which gives original cognizance to the courts of the United States, as well in equity as at law, of cases arising under any law of the United States granting to authors or inventors the exclusive right to their respective writings, inventions, and discoveries; and, upon any bill in equity filed by any party aggrieved in any such case, shall have authority to grant injunctions according to the course and principles of courts of equity, to prevent the violation of the

rights of any authors or inventors secured to them by any laws of the United States, on such terms as the said courts may deem fit and reasonable. Though the substance of this enactment is incorporated into the 17th section of the patent act of July 4, 1836, so far as it related to inventors, and so far as it related to the subject of patent-rights, is no longer in force, *proprio vigore,* yet, so far as it gave cognizance to the courts of the United States of cases of copyright, it still remains in force, and is the only law conferring equitable jurisdiction on those courts in such cases; for the 9th section of the act of February 3, 1831, protects manuscripts only.

There is nothing in this act of 1819, which extends the equity powers of the courts to the adjudication of forfeitures; it being manifestly intended, that the jurisdiction therein conferred should be the usual and known jurisdiction exercised by courts of equity for the protection of analogous rights. The prayer of this bill for the penalties must therefore be rejected.

The remaining question is, whether there ought to be a decree for an account of the profits. The complainant has not prayed for such an account, nor have the defendants stated one in their answer; but the bill does pray for general relief.

The right to an account of profits is incident to the right to an injunction in copy and patent-right cases. Colburn *v.* Simms, 2 Hare, 554; 3 Dan. Ch. Pr. 1797. And this court has held, in Watts et al. *v.* Waddle et al., 6 Pet. 389, that where the bill states a case proper for an account, one may be ordered under the prayer for general relief. See also 2 Pet. 612; 14 Ib. 156; 16 Ib. 195; 9 How. 405.

The decree of the circuit court must be reversed, and the cause remanded to the circuit court, with directions to award a perpetual injunction as prayed for in the bill, and to take an account of the profits received by the defendants from the sales of the map.

### Order.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Rhode Island, and was argued by counsel. On consideration whereof it is now here ordered, adjudged, and decreed by this court, that the decree of the said circuit court in this cause be and the same is hereby reversed with costs, and that this cause be and the same is hereby remanded to the said circuit court, with directions to award a perpetual injunction, as prayed for in the bill filed in this case, and to take an account of the profits received by the defendants from the sales of the map, and for such further proceedings in conformity to the opinion of this court, as to law and justice shall appertain.