BOBBS-MERRILL CO. v. STRAUS et al.

(Circuit Court of Appeals, Second Circuit. June 16, 1906.)

No. 189.

1. LITERARY PROPERTY—COMMON-LAW COPYRIGHT—RIGHTS OF OWNER.

The owner of a common-law copyright has a perpetual right of property and the exclusive right of first general publication, and may, prior thereto, enjoy the benefit of a restricted publication without forfeiture of the right of general publication.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Literary Property, §§ 3, 4.]

2. COPYRIGHT—RIGHTS ACQUIRED BY STATUTORY COPYRIGHT—EFFECT ON COMMON-LAW RIGHTS.

The right to a common-law copyright has been superseded by statute, and hence where the owner of the common-law copyright elects to sub-

stitute the protection of the statute for that of the common law, he, on publication, abandons or surrenders his common-law rights, including his right of limited publication, in exchange for his exclusive statutory right to multiply copies.

3. SAME.

Under Rev. St. § 4952 [U. S. Comp. St. 1901, p. 3406] giving to the owner of a copyrighted book the right to copy and vend the same, protection against multiplication of copies and the incidents thereof constitute the only protection afforded by the copyright statutes to the publisher.

4. SAME—INFRINGEMENT—SALE OF LAWFULLY PRINTED COPY.

The sale of a lawfully printed copy of a copyrighted publication, in the absence of any contract, condition, or provision of forfeiture, is not an infringement of the copyright law.

5. INJUNCTION—INDUCING BREACH OF CONTRACT—SALE UNDER RESTRICTIVE LICENSE—NOTICE—PROTECTION.

Where a copyrighted publication is sold under restriction that no dealer is licensed to sell at a less price than $1 per copy, etc., and a third person makes malicious and unlawful attempts to induce original purchasers to break their contracts, to the injury of the original seller, the latter is entitled to relief in equity.

6. SAME—EVIDENCE.

Complainant sold copies of a copyrighted book, in which was published a notice that the price of the book at retail was $1 net; that no dealer was licensed to sell at a less price, and that a sale at a less price would be treated as an infringement of the copyright. There was no reservation of title to, or any interest in, or subsequent control over, copies sold in violation of the notice, nor any suggestion of an agreement on the part of the purchaser, or restriction on, or provision for, forfeiture of the title, nor any attempt to provide that a purchase should constitute an acceptance of the terms of the notice. Dealers to whom complainant sold the books were under no agreement to enforce observance of the terms of the notice or to restrict their sales, and complainant's proof failed to show that defendants had themselves violated any contract or had persuaded others to violate any contract with complainant, but that they had purchased their copies, intending to acquire the absolute title, nor did it appear that such copies were purchased from purchasers of complainant. *Held*, that complainant was not entitled to an injunction restraining the resale of such copies at a less price than $1 per volume.

7. ELECTION OF REMEDIES—NOTICE—EFFECT.

Where a notice printed in a copyrighted publication recited that a sale at a less price than $1 per volume would be treated as an infringement of the copyright, the publisher thereby elected to pursue that remedy for violation of the notice, and was precluded from maintaining an injunction to restrain the sale.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here on appeal from a decree of the United States Circuit Court for the Southern District of New York, dismissing bill alleging infringement of copyright.

For opinion below see 139 Fed. 155.

Frank H. Platt and W. H. H. Miller, for appellant.

John G. Carlisle and Edmund E. Wise, for appellees.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The material facts herein are undisputed, and are as follows: Complainant is an Indiana corporation en-

gaged in the business of publishing and selling books; it was the owner and proprietor of a novel entitled "The Castaway," by Hallie Erminie Rives, which it caused to be duly copyrighted and published. On each copy of the published book was printed, on the page following the title page, the following notice:

"The price of this book at retail is one dollar net. No dealer is licensed to sell it at a less price, and a sale at a less price will be treated as an infringement of the copyright.

"The Bobbs-Merrill Company."

The defendants purchased copies of said book for sale at retail, 90 per cent. of which were purchased at wholesale at a rebate from the retail price of about 40 per cent., the wholesalers and the defendants knowing that the book was copyrighted and knowing of the printed notice. It is admitted that none of the wholesalers were required to enforce a compliance with the terms of such notice by retail dealers or to restrict their sales to such retail dealers only as would agree to observe the terms of said notice. The defendants sold copies of said book at the uniform retail price of 89 cents a copy. Complainant has brought this suit, claiming infringement of its copyright, to restrain defendants from selling the book at any price other than that fixed in the notice, and asking for an accounting.

The defenses material to this discussion are that the acts complained of do not constitute a violation of the rights secured to complainant by the statutes relating to copyright, and that complainant's remedy, if any, is at law, and not in equity.

The general question argued is as to the right of a proprietor of a copyright book, by affixing to each copy sold, a notice that no dealer is licensed to sell it at less than a specified price, and that "a sale at a less price will be treated as an infringement of the copyright," to maintain an action in equity against a defendant who buys the book, with knowledge of the restrictive terms, for the purpose of selling it at a reduced price and who actually sells it below the price specified in the notice.

The argument, on the one hand, is that the copyright statute gives to the proprietor the exclusive right of "vending" the book and, consequently, empowers him to exercise that right, under such restrictions as he chooses to affix to its exercise, by a general notice of rights asserted under the copyright law, and that a purchaser who buys the book with notice of the restriction acquires only a qualified right, and becomes an infringer when he disregards the restriction. In other words, the argument is that the purchaser becomes merely a licensee, and, when he disregards the terms of his license, becomes a user without authority, and may be enjoined against infringement of copyright.

The argument, on the other hand, is that the copyright statute only gives to the proprietor the exclusive right of vending which inheres at common law to every owner of property, whether tangible or incorporeal, and when he exercises it confers on the purchaser the ordinary incidents of ownership of personal property, among which is the right of alienation or to do what he pleases with his own; and that the owner of the copyright cannot by such a notice separate the right of

147 F.—2

alienation from the property so that it will remain in him, while the general right of property passes to a purchaser from his vendee, and especially when the original vendee is under no obligation to enforce said terms upon subsequent purchasers, and in the absence of proof of assent by such purchasers to said terms.

The contention by complainant of a right of restricted publication, such as is here sought, disregards the fundamental distinction between the common-law right of literary property, commonly called common-law copyright, and copyright under the statute. "A copyright is an incorporeal right to print and publish. Ager v. Murray, 105 U. S. 126, 26 L. Ed. 942. It is a property in notion, without corporeal, tangible substance. Millar v. Taylor, 4 Burr. 2303. This property is a different and independent right, detached from the corporeal property out of which it arises. Stephens v. Cady, 14 How. 528, 14 L. Ed. 528. Each of these is capable of existing and being owned and transferred independent of the other. Stevens v. Gladding, 17 How. 447, 15 L. Ed. 155." Werckmeister v. American Lithographic Co., 134 Fed. 321, 323, 324, 69 C. C. A. 553, 555, 68 L. R. A. 591. "The property of an author in his intellectual production is absolute until he voluntarily parts with all or some of his rights. There is no principle of law by which he can be compelled to publish it or to permit others to enjoy it. He has a right to exclude all persons from its enjoyment; and, when he chooses to do so, any use of the property without his consent is a violation of his rights. He may admit one or more persons to its use, to the exclusion of all others; and, in doing so, he may restrict the uses which shall be made of it. He may give a copy of his manuscript to another person, without parting with his literary property in it. He may circulate copies among his friends, for their own personal enjoyment, without giving them or others the right to publish such copies." Drone on Copyright, 102, 103.

The argument of complainant rests upon an assumed identity of common-law rights and statutory copyright. But in this view we think it is in error. "The two rights do not co-exist in the same composition; when the statutory right begins, the common-law right ends. Both may be defeated by publication." Drone on Copyright, 100.

The owner of the common-law copyright has a perpetual right of property and the exclusive right of first general publication, and may, prior thereto, enjoy the benefit of a restricted publication without forfeiture of the right of general publication. Thus, he may communicate the contents of his work under restrictions without forfeiture of the right. This communication of contents under restriction, known as a restricted or limited publication, is illustrated by lectures to classes of students, dramatic performances before a select audience, exhibitions of paintings in private galleries, private circulation of copies of manuscript, etc. Werckmeister v. American Lithographic Co., supra. "The copies which were given to the members of the committee on ceremonies and to a so-called 'Literary Committee' were delivered to them solely to enable them to decide whether the poem was one suitable and worthy of their acceptance as the ode to be delivered at the opening exercises. Such a delivery of copies of a literary production is not a pub-

lication, and could not prejudice the owner's common-law rights. Bartlette v. Crittenden, 4 McLean, 300, Fed. Cas. No. 1,082; Bartlette v. Crittenden, 5 McLean, 32, Fed. Cas. No. 1,076." Press Publishing Co. v. Monroe, 73 Fed. 196, 19 C. C. A. 429, 51 L. R. A. 353.

On the other hand, the surrender of the perpetual right is a condition precedent to the enjoyment of statutory copyright. The common-law right is lost by the general publication or unrestricted sale of a single copy. The statute protects the owner in the unrestricted publication and sale of all copies during the term of the copyright.

The right to copyright, which exists at common law, has been superseded by statute. Holmes v. Hurst, 174 U. S. 82, 19 Sup. Ct. 606, 43 L. Ed. 904. Where the owner of the common-law copyright elects to substitute the protection of the statute for that of the common law, he, upon publication, abandons or surrenders his common-law rights, including said right of limited publication, in exchange for the statutory right, the exclusive right to multiply copies. He "cannot have at the same time the benefit of the copyright statute and also retain [his] common-law right. No proposition is better settled than that a statutory copyright operates to divest a party of the common-law right." Jewelers' Mercantile Agency v. Jewelers' Publishing Co., 155 N. Y. 241, 247, 49 N. E. 872, 41 L. R. A. 846, 63 Am. St. Rep. 666.

The statute does not permit the owner of the copyright, by attempted restrictions upon the use of copies, to retain in himself forever the common-law right of first publication. Jewelers' Mercantile Agency v. Jewelers' Publishing Co., supra. The peculiar right conferred by statutory copyright is to multiply copies after publication, to the exclusion of others. Palmer v. DeWitt, 47 N. Y. 532, 536, 7 Am. Rep. 480. "Copyright may be defined as the sole and exclusive liberty of multiplying copies of an original work of composition." Coppinger, Law of Copyrights (3d Ed.) 1. This right was not reserved by the common law. Wheaton and Donaldson v. Peters and Grigg, 8 Pet. 591 (append. 725) 8 L. Ed. 1055. The common-law right of first publication and its incident of restricted publication were sufficient for the protection of authors prior to the invention of printing. Thereafter, when the substantial profit to be derived from literary property consisted in the multiplication of copies by printing, the statutory protection was substituted for the common-law protection, upon the condition precedent of the surrender of the common-law right. That this is the sole right conferred by statute, as distinguished from such common-law rights as inhere in the ownership of other property, is evident from the language of the statutes, and from the decisions.

Section 4952 [U. S. Comp. St. 1901, p. 3406], provides that the author of a book, his executors, administrators, or assigns, shall have "the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing, and vending the same."

Section 4964, Rev. St. [U. S. Comp. St. 1901, p. 3413], provides as follows:

"Every person, who, after the recording of the title of any book and the depositing of two copies of such book, as provided by this act, shall, contrary to the provisions of this act, within the term limited, and without the consent of the proprietor of the copyright first obtained in writing, signed in the presence of two or more witnesses, print, publish, dramatize, translate, or import, or knowing the same to be so printed, published, dramatized, translated, or imported, shall sell or expose to sale any copy of such book, shall forfeit every copy thereof to such proprietor, and shall also forfeit and pay such damages as may be recovered in a civil action by such proprietor in any court of competent jurisdiction."

There are many decisions and dicta which assert and support the view that the peculiar statutory protection granted to the author or proprietor is the right of multiplication of copies. "The copyright is an exclusive right to the multiplication of the copies, for the benefit of the author or his assigns, disconnected from the plate, or any other physical existence. It is an incorporeal right to print and publish the map, or, as said by Lord Mansfield in Millar v. Taylor, 4 Burr. 2396, 'A property in notion, and has no corporeal, tangible substance.'" Stephens v. Cady, 14 How. 528, 530, 14 L. Ed. 528. Stevens v. Gladding, 17 How. 447, 15 L. Ed. 155. "A copyright secures the proprietor against the copying, by others, of the original work." Johnson v. Donaldson (C. C.) 3 Fed. 22.

A dictum of the Supreme Court in Perris v. Hexamer, 99 U. S. 674, 25 L. Ed. 308, is as follows:

"A copyright gives the author or the publisher the exclusive right of multiplying copies of what he has written or printed. It follows that to infringe this right a substantial copy of the whole or of a material part must be produced."

In Publishing Co. v. Smythe (C. C.) 27 Fed. 914, it is held that where the ownership of a particular copy is parted with the transferee cannot by restrictive notices be deprived of the ordinary incidents of alienation attached to the particular copy. "The law of copyright also gives privileges to authors and publishers that do not pertain to property which anybody may make and sell if he can ; but even under the law of copyright, when the owner of a copyright and of a particular copy of a book to which it pertains, has parted with all his title to the book, and has conferred an absolute title to it upon a purchaser, he cannot restrict the right of alienation, which is one of the incidents of ownership in personal property." Garst v. Hall & Lyon Co., 179 Mass. 588, 591, 61 N. E. 219, 55 L. R. A. 631.

In Harrison v. Maynard, Merrill & Co., 61 Fed. 689, 10 C. C. A. 17, this court held as follows:

"The owner of a copyright, who has transferred the title to copyrighted books under an agreement restricting their use, cannot restrain, by virtue of the copyright statutes, sales of said books, in violation of the agreement; he is confined to his remedies for the breach of contract."

This case is cited with approval in the opinion of the Circuit Court of Appeals for the Seventh Circuit in Doan v. American Book Co., 105 Fed. 772, 45 C. C. A. 42. To the same effect is the decision in the suit by this complainant against Snellenburg (C. C.) 131 Fed. 530.

The complainant herein is attempting by a mere notice to import into the statutory copyright a right of limited publication or of restriction upon use, which was abandoned by virtue of the surrender of the common-law copyright.

Counsel for complainant argues as follows:

"To justify their sale by the proprietor's publication of the books, defendants must show an unqualified and absolute publication. But there was no unqualified publication, offer or distribution of 'The Castaway.' It was offered and published subject to the restrictions and limitations expressed in the notice."

We cannot assent to the latter assertion. We think, in view of the foregoing considerations, that there was an unqualified and absolute publication and a surrender of the right of restricted publication when the owner of the book complied with the statutory requirements, and thus acquired the right to notify the public of its exclusive right to the multiplication of copies.

Counsel for complainant contends that section 4964 of the statutes, providing for a penalty for infringement of copyright, has no bearing on this question because there may be infringements of the copyright law by a sale of a book lawfully printed or lawfully imported. While there are some obiter dicta which would seem to support this contention, we can find no decision to that effect. On the contrary, the decisions already quoted indicate that the protection against multiplication of copies and the incidents thereof constitute the only protection afforded by the statute. Section 4952 of the statutes, giving the owner of the copyright the right to copy and vend the copyrighted article, contains no suggestion of any right either of restricted sale or restricted publication. But the argument of complainant is stated as follows:

"These references to the controversy as to the common-law rights of authors after publication are sufficient to show that the copyright statutes have not created new and extraordinary rights of property which did not previously exist, but are rather declaratory of the common law, in a sense derogatory of the common law, since the statutes give the right only a limited duration."

That this view is inaccurate is sufficiently shown by many decisions. Thus, in Wheaton and Donaldson v. Peters and Grigg, 8 Pet. 591, 8 L. Ed. 1055, the court says:

"Congress, then, by this act, instead of sanctioning an existing right, as contended for, created it."

In Stevens v. Gladding, 17 How. 447, 15 L. Ed. 155, the court says:

"There being no common law of copyright in this country, whatever rights are possessed by the proprietor of the copyright must be derived from some grant thereof in some act of Congress, either nominatim or by satisfactory implication."

In re Brosnahan, Jr. (C. C.) 18 Fed. 62, Judge, afterwards Mr. Justice, Miller said:

"The sole object and purpose of the laws which constitute the patent and copyright systems is to give to the author and inventor a monopoly of what he has written or discovered, so that no one else shall make or use or sell

his writings or his invention without his permission; and what is granted to him is the exclusive right; not the abstract right, but the right in him to the exclusion of everybody else."

The fallacy of complainant's argument lies in disregarding the peculiar common-law right of literary property, namely, the right of first publication, and the right to restricted publication, and the condition precedent to the enjoyment of the statutory right, namely, the surrender of such common-law right by a general publication. If the statutory owner desires after publication to control the lawfully published copies, such control can only be secured by means of positive contract or conditions, so accepted by the party to be charged or so brought to his knowledge that it would be inequitable to permit him to violate them. But while this right might be protected at law or enforced by a court of equity, it is not a statutory right but a common-law right attached generally to the ownership of all species of property. Keeler v. Standard Folding Bed Co., 157 U. S. 659, 15 Sup. Ct. 738, 39 L. Ed. 848.

Furthermore, no right of license in case of a sale is conferred by the statute. As Judge, afterwards Mr. Justice, Jackson says in United States v. American Bell Telephone Co. (C. C.) 29 Fed. 17, 43:

"The right of the patent owner to permit or license the use of the invention is not the creature of the federal franchise or statute, but of the common law."

Counsel for complainant, quoting from the opinion of the court below that "the copyright statutes could not be invoked to control the retail trade of books, the title to which the copyright owner has transferred," says as follows:

"If by the words 'the title to which the copyright owner has transferred' is meant that he has transferred the same without limitation, the proposition is not questioned; but if it be meant that the owner of the copyright cannot prescribe limitations upon which the books may be sold in the trade, then we deny the proposition, and we say it is directly at variance with the cases above cited touching the subject, for they all proceed upon the basis that as against a party who has sold or is selling in violation of the terms prescribed by the owner of the copyright an injunction may issue."

We have already shown that the proposition thus asserted by complainant is unsupported by authority. The record shows that in this case the owner has transferred the property without limitation, so far as the transfer of title is concerned.

It is argued that the effect of thus cutting the price is disastrous to the publisher in its sale of the work, and that, therefore, the question is one which appeals to the favorable consideration of the court as a court of equity. But it is not satisfactorily shown that this arrangement is beneficial to, or required for, the protection of the author. The Constitution grants to Congress power to legislate for the benefit of the author. It is by no means clear that a free and unrestricted alienation of the book at a reduced price would not be more beneficial to the author than the higher prices provided for by the publishers' combination for the benefit of a certain class of dealers.

But it is further argued that the copyright statutes should receive a

liberal and not a strict construction because they are merely declaratory of the common law, and that the provision in this case is for the protection of the author. We have already seen, however, that the statute is in derogation of the common-law right and, therefore, is to be strictly construed.

In Thompson v. Hubbard, 131 U. S. 123, 9 Sup. Ct. 710, 33 L. Ed. 76, the Supreme Court said as follows:

"The right of action, as well as copyright itself, is wholly statutory, and means of securing such right of action are thus prescribed by Congress."

"The right of an author to a monopoly of his publications is measured and determined by the copyright act." Holmes v. Hurst, supra. Banks v. Manchester, 128 U. S. 244, 9 Sup. Ct. 36, 32 L. Ed. 425; Wheaton and Donaldson v. Peters and Grigg, supra; Perris v. Hexamer, supra.

In these circumstances, we are of the opinion that a sale of a lawfully printed copy, in the absence of any contract, condition, or provision for forfeiture, is not an infringement of the copyright law. As was said by this court in Kipling v. G. P. Putnam's Sons, 120 Fed. 631, 634, 57 C. C. A. 295, 65 L. R. A. 873, citing Harrison v. Maynard, Merrill & Co., supra:

"We are unable to find any provision in the agreements with plaintiff's publishers which prohibited the sale of the copyrighted sheets to the defendants, but if such a provision were present, the plaintiff's remedy would be an action against the publishers for breach of contract."

A court of equity, therefore, would not be justified in enforcing the provisions of the copyright law, merely to prevent a sale of a copyrighted article, because the vendor has informed the purchasing public that it will treat such sale as an infringement. We are brought, then, to a consideration of the question whether the complainant is entitled to protection, on the ground of a violation of the restrictive license stated in the notice, independently of the copyright law. The general questions raised by this inquiry belong to a class which have recently become prominent in the courts relating to attempted restrictions on the disposition of certain classes of personal property by lease or sale. These cases may be divided generally into those relating to sales of proprietary medicines made under secret processes, those protected by patents or copyright, and those involving breaches of contracts or conditions in the sale of ordinary chattels. It has been claimed as to all these classes that conditions or restrictions may be imposed by the original owner, who parts with the possession or the ownership, or both, which shall so attach to or follow the article that they may be enforced against any subsequent purchaser.

In view of the conclusions reached, it is unnecessary to express any opinion as to the scope of such attempted restrictions in the case of patented articles. It may be said generally, however, that there is such a distinction between rights of copyright and patent rights that the decision of cases under one class would not necessarily be controlling in the other class. The protection afforded by the patent law is broader in the case of patents than in that of copyright. By a grant of copyright the owner of the work acquires the exclusive right of multi-

plication of copies; by the grant of a patent the patentee acquires the exclusive right to make and use the thing patented. The patent law protects the production and use of the creative conception reduced to practical shape in various forms; the copyright law protects the publication of copies in the form or substance of the particular creative conception in which it has been expressed by its author. The right secured by the copyright act is "the right to that arrangement of words which the author has selected to express his ideas." Holmes v. Hurst, supra.

The statutory right to make a patented article and to prevent others from making it is entirely distinct from the further statutory right to use, and therefore to control the use of, the thing made.

Furthermore, the statute permits the patentee to subdivide his rights, and the common law protects him against any infringement of any part thereof. The copyright statute provides only for the assignment of the right as a whole, and, in terms, protects against infringement by unlawful publication. But in view of the conflicting opinions of various judges as to the scope of the restrictions imposed by patentees upon the use of patented articles, we express no opinion upon this question.

Nor are we required to pass upon the specific questions involved in the patent, secret process or copyright decisions. An examination of the cases under the above heads shows that they have generally been disposed of upon the ground that there was a contract between the original vendor and vendee, or that conditions were imposed or rights asserted, which, in each case, were brought home to the knowledge of a subsequent vendee, and where the right was sustained by virtue of the inherent character of the article, as in the secret processes, or by virtue of the specific statutory protection, as in the case of patents and copyrights. We are concerned rather with the general question presented in cases where there has been either a malicious or unlawful attempt by a third party to induce the original purchaser to break his contract, to the injury of the original vendor, or in those cases which relate to the attempt of an owner of an ordinary chattel to impose by contract restrictions upon its use or sale binding upon third parties, and which, it is claimed, may operate as a sort of ambulatory covenant annexed to the chattel.

There are two legal principles, which may be invoked in support of complainant's claim. The first of these may be generally stated as follows: A person who unlawfully or maliciously persuades another person to break his contract with a third person, to the injury of such third person, is liable for the damages which are the natural result of such act, and when by reason thereof he has acquired title to property wrongfully he may be adjudged a trustee ex maleficio in respect to such property, and enjoined from disposing thereof. This principle has been discussed and maintained in a great variety of cases, among which are the following: Heath v. American Book Co. (C. C.) 97 Fed. 533, where the defendant knowingly induced the state school board to buy its books, and to break a contract for purchase of books from the plaintiff; Walker v. Cronin, 107 Mass. 556; Lumley v. Gye, 2 El. & Bl. 216; Guenter v. Astor, 4 J. B. Moore, 12, cases where the defendants

knowingly persuaded persons to break contracts for services; Garst v. Charles, 187 Mass. 144, 72 N. E. 839, where defendant persuaded a purchaser of medicine from plaintiff to break his contract not to sell below a certain price; Sperry & Hutchinson Co. v. Mechanics' Clothing Co. (C. C.) 128 Fed. 800, breach of contract as to trading stamps.

The whole doctrine is fully discussed, and the principle suggested above is approved, in Angle v. Chicago, St. Paul, Minneapolis & Omaha Railway Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55. There the Supreme Court applied it in a case where, upon demurrer, it was admitted that the defendant actively interfered to prevent a party from performing a contract entered into with complainant, and secured the control of the property which was the subject of the contract. Mr. Justice Brown, delivering the opinion of the court, said as follows:

"It has been repeatedly held that, if one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the party injured can maintain an action against the wrongdoer; (citing cases). * * *

"It may be conceded that an action at law would lie for the damages sustained by the Portage Company, through the wrongful acts of the Omaha Company. Indeed, that is a fact which underlies this whole case. Yet, while an action at law would lie, it does not follow that such remedy was either full or adequate. Waiving the question as to the solvency of the Omaha Company, and assuming that any judgment against it for damages could be fully satisfied by legal process, there remains the proposition that it is contrary to equity that the defendant should be permitted to enjoy unmolested that particular property, the possession of which it sought to secure, and did in fact secure, by its wrongful acts. * * *

"While no express trust is affirmed as to the lands, yet it is familiar doctrine that a party who acquires title to property wrongfully may be adjudged a trustee ex maleficio in respect to that property."

Several of the later cases decided in the state and federal courts are collected and discussed by Judge Thomas in his exhaustive opinion in Wells & Richardson Co. v. Abraham (C. C.) 146 Fed. 190.

The other principle which might be invoked to sustain complainant's contention, and which may be considered as growing out of the doctrine already discussed, is one as to which there is some conflict in the decisions.

This principle is stated by Lord Justice Bruce in De Mattos v. Gibson, 4 De Gex & Jones, 276, as follows:

"Reason and justice seem to prescribe that at least as a general rule, where a man by gift or purchase acquires property from another with knowledge of a previous contract, lawfully and for a valuable consideration made by him with a third person, to use and employ the property for a particular purpose and in a specified manner, the acquirer shall not, to the material damage of the third person, in opposition to his contract and inconsistent with it, use the property in a manner not allowable to the giver or seller. The rule applicable alike in general, as I conceive, to movable and immovable property, recognized and adopted, as I apprehend, by the English law, may like other general rules, be liable to exceptions arising from special circumstances, but I see at present no reason for any exception in the instance before us."

In Murphy v. Christian Press Association Publishing Co.; 38 App. Div. 426, 56 N. Y. Supp. 597, a corporation owning a copyright in a prayer book and certain plates sold a set of the plates and authorized

the vendees to publish therefrom, and agreed that it would not sell a set to any other publisher without the vendees' consent, and that the price of the bound copies of the book should be a certain sum. Subsequently, the corporation was dissolved, and its receiver sold the remaining plates and the copyright to a company having full notice of said agreement. Said company proceeded to publish books at a price much less that· that fixed in the agreement between the vendor and the first vendees. The Special Term enjoined the company from selling its publications at less than the .price stipulated in the agreement. The court said as follows:

"We think this action can be maintained against the appellant, and that it is bound by the agreement of the Catholic Publication Society Company from which it acquired the copyright and electrotype plates. The agreement on the part of the defendant's predecessor in title, though technically a personal one, related to the use of its property, the copyrights and the plates, and obligated all who might acquire that property with notice of the agreement. This is the settled doctrine of the Court of Appeals where the agreement relates to real estate. Hodge v. Sloan, 107 N. Y. 244, 17 N. E. 335. 1 Am. St. Rep. 816; Lewis v. Gollner, 129 N. Y. 227, 29 N. E. 81, 26 Am. St. Rep. 516. We can see no reason why the same rule should not apply in the case of personal property, nor are we wanting in authority to sustain the proposition. New York Bank Note Co. v. Hamilton Bank Note Co.. 83 Hun. 593, 31 N. Y. Supp. 1060; Id., 28 App. Div. 411, 50 N. Y. Supp. 1093; Littlefield v. Perry, 88 U. S. 205, 22 L. Ed. 577."

So in New York Bank Note Co. v. Hamilton Bank Note Co., 28 App. Div. 411, 50 N. Y. Supp. 1093, reversed on another point in 180 N. Y. 280, 73 N. E. 48, a majority of the court approved the decision of the court below in the following language:

"If a person purchases from another a printing press, having knowledge of the existence of a contract between the vendor and a third person, whereby the vendor has agreed not to sell such presses except under certain restrictions, such third. person is entitled to enforce his contract as against the vendee. * * * Contracts prohibiting the use of personal property in a particular way are valid."

See, also, New York Phonograph Co. v. Jones (C. C.) 123 Fed. 197.
On the other hand, in Taddy & Co. v. Sterious & Co., 20 T. L. R. 102, Eng. Ch. D., tobacco was sold in boxes, accompanied by invoices, labels, etc., stating the terms of sale. The price was printed on the box, with the following notice:

"All of the above packet tobacco and cigarettes are sold by Taddy & Co. upon the express condition that retail dealers do not sell the packet tobacco or cigarettes below the prices set forth. Acceptance of the goods will be deemed a contract between the purchaser and Taddy & Co. that he will observe these stipulations."

There, the court said:

"Conditions of this kind did not run with the goods and could not be imposed upon them. Subsequent purchasers, therefore, did not take the goods subject to any conditions which the court could enforce."

The court also held, on other grounds, that the contract claimed to be created thereby was not one on which plaintiff could sue a third party.
In Garst v. Hall & Lyon Co., 179· Mass. 588, 61 N. E. 219, 55 L. R. A. 631 the complainant was the manufacturer of a proprietary med-

icine made from a secret formula, which he sold only subject to the conditions of a contract in which each purchaser agreed that he would not sell, directly or indirectly, for prices less than those specified in the agreement; and further agreed that the acceptance of said goods with the notice of such conditions should be held to be an assent on the part of the purchaser to the foregoing terms and an agreement with the complainant to sell subject to the price restrictions fixed by it. The defendant, with knowledge of these conditions, bought said medicine, not from the plaintiff, nor from his vendee who had agreed to sell subject to the above conditions, but from purchasers from such vendees. In these circumstances, the court held as follows:

"The contract contemplated sales by retailers which shall pass an absolute title to the property. The purchaser from a purchaser has an absolute right to dispose of the property. He may consume it or sell it to another. The plaintiff has contracts from his vendees in regard to the prices at which they will sell if they sell at all. If they sell in violation of their contracts with the plaintiff, he has a remedy against them to recover his damages. Garst v. Harris, 177 Mass. 72, 58 N. E. 174. This right is founded on the personal contract alone, and it can be enforced only against the contracting party. To say that this contract is attached to the property and follows it through successive sales which severally pass title is a very different proposition. We know of no authority or of any sound principle which will justify us in so holding."

In the light of these decisions the disposition of the questions raised in the present case depends upon the effect to be given to the terms of the printed notice. Its language may be fairly interpreted as though it read as follows:

"The Bobbs-Merrill Co. hereby gives notice that it has licensed dealers to sell this book at the net retail price of $1, and not at any less price, and that the penalties which will be imposed for sale by a dealer at a less price will be those provided in case of infringement of copyright."

It will be observed that this statement is a notice, not a contract. There is no reservation of title to, or of any interest in, or subsequent control over, the copy sold; no suggestion of any agreement on the part of the purchaser, or restriction upon, or provision for forfeiture of, title; no attempt to provide that a purchase shall constitute an acceptance of the terms stated in the notice. In fact, as already shown, it is conceded that the dealers to whom complainant sold the books were under no agreement or obligation to enforce the observance of the terms of said notice, or to restrict their sales to such retail dealers as would agree to observe said notice.

In these circumstances, we think complainant has failed to bring itself within the principles applied in the foregoing cases. It has failed to show that the defendants have themselves violated any contract, or have persuaded any other persons to violate any contract with complainant. It does not appear that any purchaser assented to the terms of the notice or agreed that the absolute title acquired by a sale should be converted into a qualified or restricted title. Furthermore, it does not appear that defendants purchased their copies from purchasers from complainant. But even if it could be claimed that such a notice might ordinarily operate to annex a condition to the sale in the case of the original purchaser from complainant, and that a subsequent purchaser

with notice might, therefore, acquire title subject to such conditions, and might, therefore, be restrained from their violation by a court of equity, yet, we are of the opinion that this claim would not help this complainant.

The only notice of right asserted in case of breach of the attempted condition is that contained in the notice itself, namely, that complainant will proceed by suit for infringement under the copyright law. Therefore, even if an assent to the terms of the notice might be implied from the sales by defendants, yet, as complainant by said notice has elected to limit itself to its supposed right "to treat a sale at a less price as an infringement of the copyright law," the defendants cannot be assumed to have assented to the assertion of any other and inconsistent right. In this notice of election of remedies, the case is differentiated from the other classes of cases already considered, with one or two exceptions, which, for reasons therein shown, do not seem to be applicable to this case.

We conclude, therefore, upon the facts shown herein, that the complainant is not entitled to relief either under the copyright statutes, or by virtue of the general powers of a court of equity.

The decree is affirmed.