LESTER A. LEWIS, Appellant, v. ERVIN G. GOLLNER et al., Respondents.

The equity resulting from a valid agreement by the owner of land, restricting the use thereof, although not a covenant running with the land or a legal exception or reservation out of it, but simply a personal contract, goes with the land into the hands of a purchaser from such owner, with notice, who did not buy innocently or in good faith, and this equity may be enforced by injunction.     .

To warrant equitable relief in case of the infraction of such an agreement it is not essential that it should be binding at law, or that any privity of estate should exist between the parties, nor is it an objection that the contract is by parol.

Defendant G., who was a builder of flats and tenement-houses, entered into a contract to purchase a lot fronting on a street in the rear of plaintiff's residence for the purpose of erecting thereon a flat or tenement-house. This street was then occupied by private residences of a superior character, and the contemplated structure would be an injury and damage to the neighboring premises. The price G. had agreed to pay was the full value of the premises; he had paid thereon but $500. Failing to induce G. to refrain from erecting such a building, certain owners in the neighborhood, including plaintiff, for the sole and declared purpose of saving the neighborhood from flats, purchased and took an assignment of the contract at an advance of $6,000, upon the oral agreement by defendant "that he would not construct any flats in

plaintiff's immediate neighborhood or trouble him any more." G., however, soon thereafter purchased other premises in the neighborhood and commenced erecting a large flat thereon, and upon being threatened with an action he conveyed the premises to the other defendant, his wife, nominally in exchange for other property of comparatively small value, and then as her agent and architect continued the construction. The wife took title, with full knowledge of all the facts and for the purpose and with the intent of aiding and protecting her husband in his effort to avoid his contract. *Held*, that plaintiff was entitled to an injunction restraining the proposed erection, or the use of any structure on the premises as a flat.

(Argued October 29, 1891; decided December 1, 1891.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made April 28, 1891, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

This action was brought to restrain the defendants from constructing flats on certain premises in the city of Brooklyn.

The facts, so far as material, are stated in the opinion.

*William C. Beecher* for appellant. Plaintiff was entitled to an injunction. (*Hubbard* v. *Miller*, 27 Mich. 15; *D. W. Co.* v. *Roebe*, 106 N. Y. 473; *Piggott* v. *Stratton*, 1 DeG., F. & J. 33.) There can be no objection to the agreement with Gollner, because it is in restraint of trade. (*Hodge* v. *Sloan*, 107 N. Y. 244.) The fact that this restrictive agreement was by parol does not at all affect plaintiff's right to enforce it. (*Tallmadge* v. *E. R. Bank*, 26 N. Y. 105; *Trustees* v. *Lynch*, 70 id. 440; *Gilbert* v. *Peteler*, 38 Barb. 488–513; *Sutton* v. *Head*, 86 Kan. 156; Taylor on Ev. §§ 1038, 1049; *Welz* v. *Rhodius*, 87 Ind. 1; *Remington* v. *Palmer*, 62 N. Y. 31; *Chapin* v. *Dobson*, 78 id. 74; *Julliard* v. *Chaffee*, 92 id. 529–536; *Dodge* v. *Zimmer*, 110 id. 43–49; *Routledge* v. *Worthington Co.*, 119 id. 592.) In actions of this character, the question as to whether the restrictive agreement was a covenant running with the land, has nothing to do with the question. (*Hodge* v. *Sloan*, 107 N. Y. 244, 250; *Tuch* v. *Maxhay*, 1 Hall, 105; *Whitney* v. *U. P. R. Co.*, 11

Gray, 359.)   An action to enforce a restrictive agreement such as this one is purely equitable, and the remedy is by injunction, and not by action for damages.   (*D. M. Co.* v. *Roeber,* 106 N. Y. 473, 486 ; *Hodge* v. *Sloan,* 107 id. 244 ; *Tallmadge* v. *E. R. Bank,* 26 id. 105 ; *Trustees* v. *Lynch,* 70 id. 440–453 ; *Stewart* v. *Winters,* 4 Sandf. Ch. 587–591 ; *Gilbert* v. *Peteler,* 38 Barb. 488, 513 ; *House* v. *Clemens,* 24 Abb. [N. C.] 381, 390 ; *Clark* v. *Martin,* 49 Penn. St. 289–297 ; *Piggott* v. *Stratton,* 1 DeGex, G. & J. 33 ; *Doty* v. *Martin,* 32 Mich. 462 ; *Buck* v. *Adams,* 17 Atl. Rep. 961 ; *Spies* v. *Lambdin,* 45 Ga. 319 ; *Sutton* v. *Head,* 86 Ky. 156 ; 2 High on Inj. [3d ed.] §§ 1142–1154 ; *Mfg. Co.* v. *Stockyard,* 23 N. J. Eq. 161–166 ; *Godfrey* v. *Black,* 39 Kan. 193–195 ; *Uline* v. *N. Y. C. R. R. Co.,* 101 N. Y. 98.) Mrs. Gollner, if she had notice of the agreement between Mr. Lewis and her husband, is in no better position than he himself would have been.   (*Hodge* v. *Sloan,* 107 N. Y. 244–251 ; *Trustees* v. *Lynch,* 70 id. 440–450 ; *Tallmadge* v. *E. R. Bank,* 26 id. 105 ; *Kirkpatrick* v. *Peshine,* 24 N. J. Eq. 206–214 ; *Parker* v. *Nightingale,* 88 Mass. 341 ; 107 N. Y. 251 ; 2 High on Inj. [3d ed.] § 1144.)   Mrs. Gollner had full notice of the agreement between her husband and plaintiff. (*Holden* v. *N. Y. & E. Bank,* 72 N. Y. 286 ; *Hart* v. *Bank,* 22 Vt. 252 ; *Roland* v. *Hart,* L. R. [6 Ch. App.] 678 ; *Bennet* v. *Buchan,* 76 N. Y. 386, 390 ; *Clark* v. *Fuller,* 39 Conn. 238 ; *White* v. *King,* 53 Ala. 162 ; *Adams* v. *Mills,* 60 N. Y. 533, 539 ; *M. P. Co.* v. *F. I. Co.,* 16 J. & S. 442.)   There can be no question of *laches* in this case.   (*Coles* v. *Sims,* 5 DeG., M. & G. 1, 8.)   The question of defendants' convenience or inconvenience is immaterial.   (High on Inj. [3d ed.] §§ 1135, 1136 ; *Clark* v. *Martin,* 49 Penn. St. 289.)

*George C. Case* for respondents.   The contract is void, as it is in restraint of trade and against public policy ; absolute as to time and indefinite as to territorial limit.   (*Lawrence* v. *Kidder,* 10 Barb. 641.)   It is not enough that there be a consideration such as would uphold a contract in which the public

have no interest, but that whatever may be the pecuniary con-sideration, it must appear in addition that there was some good reason for entering into the contract, and that it imposes no restraint upon one party which is not beneficial to the other. (*Chappel* v. *Brockway*, 21 Wend. 160; *Ross* v. *Sadgbeer*, Id. 166; *Nobles* v. *Bates*, 7 Cow. 307; *Jarvis* v. *Peck*, 10 Paige, 123; *Dunlop* v. *Gregory*, 10 N. Y. 241; *D. M. Co.* v. *Roeber*, 106 id. 473; *Hodge* v. *Sloan*, 107 id. 248; 2 Pars. on Cont. 748, note.) The contract is indefinite and uncertain as to its meaning and the territory it is intended to affect, consequently it cannot be specifically performed or enforced by a court of equity. (1 Pom. Eq. Juris. § 342; *Snowden* v. *Noah*, Hopk. 351; Pars. on Cont. 57.) This is not an action where an injunction should be granted, as it appeared by the evidence of the plaintiff's witnesses the damages could be assessed and reparation made by action at law. (*Thompson* v. *Matthews*, 2 Edw. Ch. 212; *T. & B. R. R. Co.* v. *B., H. T. & W. R. Co.*, 86 N. Y. 126; Story's Eq. Juris. § 925; Willard's Eq. Juris. 381; Potter's Eq. Juris. 342.) It would be inequitable and unconscientious to specifically enforce the agreement. (Potter's Eq. Juris. 281; *Trustees, etc.,* v. *Thatcher*, 87 N. Y. 317, 318.) The granting of the equitable remedy is a matter of discretion. (*Bruce* v. *Tucker*, 42 Cal. 346; Pom. on Cont. 47, 52; 2 Pars. on Cont. [4th ed.] 511; *Seymour* v. *Delaney*, 3 Cow. 447; Potter on Cont. 243, 258.)

Finch, J. All the facts alleged in plaintiff's complaint were found by the court, but were held to be insufficient to entitle him to equitable relief.

The plaintiff's residence was on President street between Seventh and Eighth avenues in the city of Brooklyn. That street and Union street, which runs parallel with it one block away, are occupied by private residences constructed by citizens of some wealth and social standing whose homes are more or less creditable to their taste, and in which, as giving character to their neighborhood, they feel a pardonable pride. That part of the city had never been invaded by flats or tene-

ment-houses, which bring together a changing and floating population under one roof, having no ownership of their own, and caring little for anything beyond their personal comfort and immediate needs. Into this locality came the defendant Gollner, a builder of tenement-houses and flats. He bought a lot fronting on Union street and immediately in the rear of plaintiff's premises, and at once announced his intention of erect- ing there a seven-story flat. Such a building in such a locality was regarded as offensive and injurious by the residents of the vicinity, and the court has found as a fact that its construction in that locality would cause injury and damage to the neighboring premises. Gollner was not without experience, and apparently knew what he was about when he took some pains to let his plans be generally understood. The neighbors at first remonstrated, but found Gollner immovable and standing upon his rights. They then sought to buy him out for the sole and declared purpose of saving the neighborhood from flats. Gollner had no title but simply a contract. The price he had agreed to pay was eighteen thousand dollars, which was the full and fair value of the property, and upon that he had paid only the sum of five hundred dollars. He began the negotiations with a very large price, but finally agreed to sell out for twenty-four thousand and five hundred dollars, or a net profit of six thousand dollars, and upon the further contract that " he would not construct or erect any flats in plaintiff's imme- diate neighborhood or trouble him any more." It is evident, since the lots were worth in the market but eighteen thousand dollars, since the sole motive of the purchasers from Gollner was to prevent his meditated construction, and since his declaration of his purpose was the cause and occasion of the final purchase, that the six thousand dollars was the considera- tion for the restrictive agreement of Gollner, and was the price paid for his covenant not to build flats in the neighbor- hood or trouble its residents with similar injurious and disa- greeable enterprises. Neither party at all misunderstood that this was the material point of the contract. It would have been the extreme of folly for the purchasers to pay six

thousand dollars to prevent the erection of flats on the one lot alone, leaving Gollner free to repeat the enterprise in the immediate neighborhood, and inflict the very injury to escape which the tribute had been paid. Gollner himself, according to the plaintiff's proof, accurately understood and clearly stated the pith of the agreement when he said, that after making it, if he should build flats in the vicinity, he "should be considered a blackmailer;" and when other lots were suggested by the witness Moody, Gollner said, "What, go for more blood money after I had taken blood money out of those people; I would not do it." And yet he did attempt to do it. At the moment when his contract with plaintiff was closed and the down payment was made, he began negotiations for the purchase of a lot on Union street diagonally opposite his first purchase and, obtaining title, at once commenced the erection of a seven-story flat. When reminded of his agreement and remonstrated with he seems, according to one witness, to have regarded it as a good joke upon his vendees, and added that "he guessed he could fight them with their own money, that he had $6,000 of it in his clothes—patting his pocket,—and he would see that go as far as it would last in that direction." Then came a letter from plaintiff's attorney threatening an action, and a refusal by one of his materialmen to further supply him under the circumstances, and thereupon Gollner sought shelter for his enterprise and his breach of faith under an ownership in his wife. His equity in the lot purchased was $2,000, and that equity, together with his large expenditure upon the foundations, he conveyed to her for her equity in two other lots which amounted to seven hundred dollars; and then, as her agent and architect nominally and in form, continued the construction. Mrs. Gollner lent herself to this artifice and took the title with full knowledge of all the facts, and unquestionably for the purpose and with the intent of aiding and protecting her husband in his effort to avoid his own honest obligation.

This state of facts had its natural effect upon the courts below, and the General Term, after their recital, added that if

there was any authority, directly or indirectly, in plaintiff's favor they would without hesitation grant him relief; but saying that, felt also bound to say that equity stood helpless before this cool and deliberate wrong. The inquiry which faces us is, therefore, whether in truth equity is thus helpless to enforce such a clear and admitted right.

I think we should first examine the situation, as between plaintiff and Gollner upon the supposition that the latter had remained owner of the land and was himself engaged in violating his contract, and ask of ourselves the question whether in such event it would have been possible for equity to interfere, or whether the objections and difficulties suggested by the respondents would have proved insuperable.

Two of those objections we may dismiss quite briefly. The agreement was not in the least indefinite or uncertain, as it respects the matter in controversy. The phrase "immediate neighborhood," taken in connection with the subject-matter of the contract, is not so indefinite as to be incapable of just and natural boundaries, but in any event, covers and includes the locality of the construction in progress. The court has so found, and there is no reason for doubting its correctness. Nor is there any foundation for saying that, in its restrictive character, the agreement is against public policy. We have too lately discussed that subject to make a recurrence to it necessary. We have perhaps widened and extended the area within which restraints of trade and business may lawfully operate, and certainly should not narrow them till they are less than one neighborhood in a single city.

Nor is there any difficulty in the fact that the agreement is by parol and purely personal. If just grounds of equitable jurisdiction exist, any valid contract, however unsolemn, may be enforced by a decree of specific performance. The cases are very numerous in which agreements purely personal not to engage in a particular trade or business within certain reasonable boundaries, have been enforced by injunction, and it certainly does not lessen the duty or imperil the right that the contract proved or established is by parol. In one possible

view of this case, we are in fact dealing with just such a contract. The occupation of the defendant Gollner was that of a builder of flats and tenement-houses. He so describes himself and gives that as his specific business and occupation. He sought to carry it on in plaintiff's neighborhood, and was paid six thousand dollars not to carry it on in that locality, and because his doing so would in fact cause injury to the persons who paid him the money. Of course, there is a difference between the present case and those in which the contract purpose is to prevent competition ; a difference which respects the nature and character of the injury resulting from a breach ; but that difference does not disturb the doctrine common to both, that in a proper case, equity will specifically enforce by affirmative decree or restraining injunction a definite and fully-established and valid contract, although a personal one, and irrespective of the fact that it happened to be by parol. The jurisdiction attaches upon the ground that an action at law for damages will not do complete justice, or accomplish the purpose contemplated by the contract. Even though the agreement itself fixes a penalty for its breach, it will not follow that equitable relief must be denied, for, if the contract appears to be such in its character and purpose that its performance was contemplated by the parties and not merely damages for the breach, the equitable relief will be awarded. (*Diamond Match Co.* v. *Roeber*, 106 N. Y. 474.) When that relief is by injunction to restrain the commission of an injurious act, the complaint of the plaintiff is somewhat in the nature of a bill *quia timet*, in which equity acts to prevent a mischief rather than to redress it. There is, therefore, no reasonable doubt that if Gollner was still the owner of the land and engaged in constructing the flats his enterprise could be restrained by injunction. No other remedy would have the dimensions or proportions of the contract purpose. Money damages could not be an accurate substitute and would merely palliate and not redress the injury. It would be a continuing one whose full and actual effects could scarcely be foreseen, and which the plaintiff could only escape by breaking up his

home and retreating to some possible locality in which tene-
ments were not and their builders did not afflict.

But Gollner did not remain the owner of his new purchase,
and that brings us to the difficulty which the courts below
deemed insurmountable, and which needs to be thoughtfully
considered.   They reasoned that the new vendee could not be
affected, except through or by the purchase of the land, and
so, only when the land carried with it as an inseparable attach-
ment the burden of the contract; that when the contract was
made, there was no land to which it did or could attach; and
the agreement remained wholly personal to Gollner and did
not affect or bind his wife.   I do not see the contract in
that way.   Gollner might have fulfilled it by omitting to buy
or lease any land within the prescribed limits, but his agree-
ment left him at liberty to do so or not as he pleased, and yet.
required that if he did so purchase or lease, he should not.
erect upon the land so owned or possessed the prohibited
structures.   The moment he bought or leased any such land,
he came under an obligation not to use it in a particular way ;.
the land in his hands necessarily became restricted and limited
in the use of which it was capable; and as much so, though
bought of another, as if it had come from the contractor, who
imposed tho restraint as vendor.   I do not see why the equit-
able rights of the plaintiff did not attach to the land when
bought, if it came, as it did, within the scope of the contract.
Why should it affect the result that the obligation and the
land ownership were not simultaneous, or that the latter came
from a vendor who did not restrict when the contractor could
and did?   In the case of a mortgage the lien may attach to
and bind after-acquired property, or cover future and later
advances, as between the parties themselves, and that is per-
mitted because they have so agreed and their contract con-
templates that precise result.   In like manner I think the
agreement under discussion was in substance and effect, that
whatever land the defendant Gollner might thereafter possess
in that immediate neighborhood should be restricted in its use
by him, and should not be devoted to the construction of tene-

ments or flats. In other words, when he bought the land the plaintiff's equitable rights at once attached to it, became a burden upon it so long as Gollner owned it, so that apparently the contract ceases to be merely and purely personal, because it affects and was intended to affect the use and occupation of Gollner's after-acquired land in that neighborhood. But if the contract remains technically a personal one, I think the reasonable and settled doctrine is that the contract equity is so attached to the use of the land which is the subject-matter as to follow the land itself into the hands of a purchaser with full knowledge of all the facts, who buys with his eyes open to the existing equity, and more especially when he buys for the express purpose of defeating and evading that equity. It has been held that the equity resulting from a valid agreement, although the latter was not a covenant running with the land, or a legal exception or reservation out of it, but stood solely upon the ground of a personal contract dictating the mode of user, would, nevertheless, go with the land into the hands of a purchaser, with notice, and who did not buy innocently or in good faith. ( *Whitney* v. *Union Railway Co.*, 11 Gray, 363.)

In *Hodge* v. *Sloan* (107 N. Y. 250), we substantially affirmed that doctrine, holding that a purchaser without restriction in his deed, but from one who was restricted by a personal covenant, not running with the land or binding his assigns, yet with notice of the facts, is bound by the restriction in a court of equity. Judge Danforth, described the character of the agreement thus: " It is restrictive, not collateral to the land, but relates to its use."

It is true and should be noted that in these cases the restrictions followed the line of title and were imposed by the original owners and vendors of the land, while here they were not so imposed, but came from one never an owner of the land, but deriving his right from a contract with one who did become such owner. But why should that difference change the result ? The original owner's right rests upon one consideration, and that of the stranger to the title upon another, but each are equally good and worthy of equitable regard. In *Parker* v.

*Nightingale* (6 Allen, 344), it is declared not to be in the least material that the restrictive stipulations should be binding at law, or that any privity of estate should subsist between parties in order to render them obligatory and to warrant equitable relief in case of their infraction. I think that doctrine is sound and just. The source of the restriction would seem to be immaterial if itself binding and founded upon sufficient consideration; and a breach is no greater wrong to a privy in estate than to a stranger validly contracting about its use. Nor can the vendee in bad faith stand upon such a difference. Equity has no compassion for a fraud, and he who buys in aid of one with full knowledge of what is right, but with purpose to defeat it, should not escape the hand of equity by a criticism upon the origin of the restriction violated. If these views are correct it will follow that plaintiff should have been awarded the relief which he sought.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except Ruger, Ch. J., and Andrews, J., not voting.

Judgment reversed.