Frank K. Murphy and Others, Doing Business under the Copartnership Name of John Murphy & Co., Respondents, v. Christian Press Association Publishing Company, Appellant.

*Contract authorizing the printing from the vendor's plates of books to be sold at a specified price — sale of plates to another party by a receiver of the vendor — the purchaser restrained from selling a better edition at a less price — contract in restraint of trade — monopoly.*

A corporation owning the copyright of a prayer book sold a set of plates (for printing in one color only), and authorized the vendees, subject to certain restrictions, to publish the work from that set of plates, covenanting that it would not sell a set of plates to any other publisher without the consent of the vendees ; the agreement contained a provision that the retail price for plainly bound copies should be one dollar and twenty-five cents, and fixed the discounts to be allowed to the trade. Subsequently a receiver of the corporation sold the remaining sets of plates and the copyright of the prayer book to a company having full notice of such agreement, and the latter proceeded to publish from plates printing in two colors a finer book than that published by the former vendees, and to sell the same at a price much less than that fixed in the agreement between the vendor and the first vendees.

---

*Held,* that the agreement made by the vendor, though technically a personal one, imposed an obligation upon all who acquired the plates with notice of such agreement, and that the first vendees were entitled to an injunction restraining the second vendee from selling its publications at less than the stipulated price;

That while the agreement only fixed in terms the prices at which "plainly bound copies" might be sold, it was not contemplated that the parties should be at liberty to sell handsomer editions of the publication for a less price than that stipulated for the "plainly bound copies;"

That the principle upon which contracts in restraint of trade are declared void had no application to an agreement fixing the price of copies of the volumes of a single copyrighted book.

*Semble,* that if all the publishers of copyrighted books upon a certain subject were to combine and agree not to sell any publication on that subject except for a stipulated price, the contract would be in restraint of trade and void.

APPEAL by the defendant, the Christian Press Association Publishing Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 10th day of August, 1898, upon the decision of the court rendered after a trial at the New York Special Term, with notice of an intention to bring up for review upon such appeal an interlocutory judgment entered in said clerk's office on the 18th day of May, 1897, upon the decision of the court rendered after a trial at the New York Special Term overruling the defendant's demurrer to the plaintiffs' complaint.

This appeal was transferred from the first department to the second department.

*Joseph H. Fargis,* for the appellant.

*W. W. Thompson,* for the respondents.

CULLEN, J.:

This action was brought by the plaintiffs, who constitute the firm of John Murphy & Co., to restrain the defendant from selling a prayer book published by it, and known as "A Manual of Prayers for the Use of the Catholic Laity," at lower prices than those prescribed in an agreement between the plaintiffs and the Catholic Publication Society Company. In 1889 that company owned the copyright of the book. This is charged in the complaint and admitted in the answer, and we can take no notice of the communication of counsel for the appellant, in which he asserts that the company did not acquire the copyright until a subsequent time. For the publication of the work the company had procured four

sets of electrotype plates — one of these for printing the whole text in black, a second for printing the text partly in black and partly in red, and two others which were duplicates of those described. In June, 1889, the Catholic Company entered into a written agreement with the plaintiffs by which it sold them one set of plates (for printing in single color only), and authorized the plaintiffs, subject to certain restrictions, to publish the work from that set of plates. The Catholic Society covenanted that it would not sell a set of plates to any other publisher without the consent of the plaintiffs. The agreement contained this further provision : " It is further agreed that the retail price for plainly-bound copies shall be one dollar and twenty-five cents, and a royalty of six cents for each and every copy sold shall be paid to the ordinary of the diocese in which the book is printed and published.   It is further agreed that the greatest discount allowed to the trade shall not exceed forty per cent, and the greatest discount allowed to the clergy and religious shall not exceed twenty-five per cent, except when the trade purchases five hundred dollars' worth at any one time, then an extra ten per cent may be allowed, and except when the trade purchases one thousand dollars' worth at any one time ; then fifty per cent discount may be allowed." The plaintiffs paid for the plates, and both parties proceeded with the publication of the book.   In 1895 the Catholic Society was dissolved and a receiver of its property appointed.   The receiver sold the plates and copyright to the appellant.   At the time of the purchase the appellant had full notice of the agreement with the plaintiffs, a copy of the agreement having been delivered to it.   Since its purchase the appellant has published the prayer book and has sold it at a price much less than that prescribed by the agreement between the plaintiffs and the Catholic Society.   The edition published by the appellant is in parti-colored print, commonly called " rubricated."   The text presents a more beautiful appearance to the eye, and it is a rather finer book than that published by the plaintiffs.   The Special Term enjoined the appellant from selling its publications at less than the stipulated price, and directed a reference to assess the plaintiffs' damages.   From that judgment this appeal is taken.

We think this action can be maintained against the appellant, and that it is bound by the agreement of the Catholic Publication

Society Company from which it acquired the copyright and electrotype plates. The agreement on the part of the defendant's predecesor in title, though technically a personal one, related to the use of its property, the copyrights and the plates, and obligated all who might acquire that property with notice of the agreement. This is the settled doctrine of the Court of Appeals where the agreement relates to real estate. (*Hodge* v. *Sloan*, 107 N. Y. 244; *Lewis* v. *Gollner*, 129 id. 227.) We can see no reason why the same rule should not apply in the case of personal property, nor are we wanting in authority to sustain the proposition. (*New York Bank Note Co.* v. *Hamilton Bank Note Co.*, 83 Hun, 593; 28 App. Div. 411; *Littlefield* v. *Perry*, 88 U. S. 205.) In Drone on Copyright (p. 374) it is said: " It may be regarded as settled that a Court of Chancery will restrain an author, or any person having notice, from violating an express negative convenant made by the author." This is equally applicable to the covenant of any person who has acquired title to the copyright in any manner. While the plaintiffs under their agreement with the Catholic Society acquired no legal title to any part of the copyright, in equity they acquired an interest very similar to a negative easement in real estate, which easement incumbered the property in the hands of any party who might have notice. A copyright is very much of the same character as a patent. Under a license a patentee acquires no title to the patent, but he may in the name of his licensor prosecute infringers on his rights, or compel the licensor to specifically perform the terms of his agreement.

The most serious question arises on the construction of the written agreement. The agreement refers in terms solely to the prices at which " plainly-bound copies " may be sold. The appellant contends that its publications are not plainly-bound copies, and do not fall within the terms of the agreement. The agreement, however, must be construed reasonably, and some effect given to it. Certainly it never contemplated that while the parties were restrained from selling plainly-bound copies at less than a prescribed price, they should be at liberty to sell handsomer editions of the publication for a less price than that stipulated for the plainly-bound copies. The evidence shows that " plainly-bound copies " is not a technical term of the trade. We think that in this agreement the words must be

construed as meaning the cheapest editions that might be published; otherwise they are without effect.

The appellant urges that the agreement is void as being in restraint of trade. The principle that contracts in restraint of trade are against public policy, and, therefore, illegal, has no application to the publication of a copyrighted book or a patented invention. The very object of copyrights and of letters patent is to give monopolies. This constitutes their value. The case of *National Harrow Co. v. Bement & Sons* (21 App. Div. 290) is not in point. In that case an agreement was entered into by substantially all the makers in the country of the different kinds of harrows, to transfer their various patents to a single corporation, to receive in return licenses from that corporation for the particular styles of harrows which they had been manufacturing, and to sell their product only at prices fixed by the corporation. It was held that such an agreement was in restraint of trade, and that the fact that the articles were manufactured under patents granted by the United States did not relieve a contract in relation to such articles from the rules of public policy that control agreements concerning other property. But the case of the publication of a single copyrighted book, or the manufacture of a single patented article, differs entirely from the combination that was condemned by the court in the case cited. We suppose that the author of a new geometry may fix the price at which he will sell his work at any sum, or arrange with others for its publication and sale at the stipulated price. But if all the publishers of books on geometry were to combine and agree not to sell any publication on that subject except for a stipulated price, the contract would be in restraint of trade and void. The difference of principle between the two cases is just this: Monopolies are not favored, and agreements to create the same, except where authorized by law, are void. No law authorizes a monopoly of all publications on the subject of geometry; the law does, however, authorize and grant to the author a monopoly in any particular work which he may publish on that subject.

The judgment appealed from should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.