LOUIS GONZALES, Respondent, v. THE KENTUCKY DERBY COMPANY, Defendant, Impleaded with ISIDOR REICHEN-THALER, Appellant.

Second Department, June 24, 1921.

Contracts — contract not to sell or lease game or device to another — purchase by defendant of game operated by same mechanism with knowledge of lease to plaintiff — findings that games were same — acts of defendant done maliciously — defendant liable for inducing lessor to break contract with plaintiff — damages and not profits recoverable — injunction too broad.

In an action to restrain the defendant from operating a game or device and to compel an accounting for the profits that he made by conducting the game it appeared that the plaintiff leased from a third person a game or device known as the " Kentucky Derby " which was operated by machinery; that the contract between the plaintiff and the lessor provided that the lessor would not sell or lease the same game to any other person to be operated on the Bowery at Coney Island, N. Y.; that thereafter the defendant with full knowledge of the contract between the plaintiff and the lessor of the game, purchased a device called " Over the Top " which was operated by the same mechanism as the game leased by the plaintiff; that the only difference between the two games was that the background of the one leased by the plaintiff represented a race course over which miniature horses were driven by machinery while the game purchased by the defendant showed a battle field and instead of horses there were soldiers.

*Held,* that a judgment in favor of the plaintiff can be supported only by a finding of fact that the game sold to the defendant is the "Kentucky Derby " game or device leased by the plaintiff.

Although no finding was made to that effect the fact did appear in a finding by the court, and the Appellate Division will add a finding of fact that the two games are the same.

The change in the background of the games and the substitution of figures of soldiers for the figures of horses does not change the identity of the game or device; in the appeal for public patronage they were the same game, and in the mechanism the same device.

The obligation to abstain from interference with a contract between others is a legal obligation, and neither active, as distinguished from constructive, fraud nor fraudulent misrepresentation is essential to the cause.

The act of the defendant was properly found to be malicious, for the defendant knew about the contract rights of the plaintiff, and the change from horses to soldiers was done with the intent of evading the provisions of the contract between the plaintiff and his lessor.

The action is one in tort and it was rightly referred to a referee to compute damages instead of profits.

Equity has jurisdiction to proceed by injunction to prevent the continuing breach of the contract in the future and, incidentally, to award damages for the past, but the judgment should enjoin the defendant in the use of the particular game only and should not extend to like or similar games, nor to the use thereof other than in the place specified in plaintiff's lease.

PUTNAM, J., dissents, with opinion.

APPEAL by the defendant, Isidor Reichenthaler, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 10th day of January, 1921, upon the decision of the court rendered after a trial at the Kings Special Term.

The Kentucky Derby Company, Inc., manufactured a game or device known as the "Kentucky Derby." It consisted of a mechanism by which miniature horses were driven along a miniature race course by the operation of machinery controlled by the patrons of the game. The background or scenery of the game, called the "flash," represented a race course. On or about the 18th day of April, 1918, the Kentucky Derby Company leased one of the games to the plaintiff for a term of fifteen years by a written contract containing the following clause, viz.: "III. The said Company agrees that it will not itself operate, or sell or lease to any other person, firm or corporation any other Kentucky Derby game or device,

to be operated on the thoroughfare known as the Bowery, Coney Island, N. Y., during the season of 1918, or as long thereafter as the said Gonzales wishes to have the exclusive right to operate the same game or device on said thoroughfare, as hereinafter provided." In April, 1919, while the plaintiff had the so-called " exclusive right," the Kentucky Derby Company sold to defendant Reichenthaler an amusement device called " Over the Top," and Reichenthaler installed it on the Bowery, Coney Island, near the " Kentucky Derby " game operated by plaintiff. The game " Over the Top " was operated in the same way and by the same machinery as the " Kentucky Derby " game, but differed from it in that the " flash " or background of " Over the Top " showed a battlefield instead of a race course, and that instead of horses there were soldiers. Reichenthaler was fully informed of the terms of the contract between the Kentucky Derby Company, Inc., and plaintiff, and obtained the game " Over the Top " and installed it near the plaintiff for the purpose of securing patronage which would otherwise have fallen to plaintiff.

The plaintiff, claiming that the game " Over the Top " was the " Kentucky Derby " game, brought this action against Reichenthaler and the Kentucky Derby Company, praying that Reichenthaler be restrained from operating the game " Over the Top " and that he be directed to account to the plaintiff for the profits that he made by conducting the game. The action was discontinued against the Kentucky Derby Company, Inc., and upon trial judgment was granted to plaintiff enjoining Reichenthaler from the use of the game " Over the Top " and referring the case to a referee to compute the damages sustained by the plaintiff. From that judgment Reichenthaler appeals.

*Jerome A. Strauss* [*Samuel Abrahams* with him on the brief], for the appellant.

*Charles E. McMahon* [*George B. Hayes* with him on the brief], for the respondent.

BLACKMAR, P. J.:

The primary controverted question of fact is whether the game " Over the Top " is the same as the " Kentucky Derby "

game. There are several findings that the games are alike or " similar " or " corresponding; " but such findings are irrelevant. The judgment can be supported only by a finding of fact that the game called " Over the Top," sold to defendant Reichenthaler, is the " Kentucky Derby " game or device. However, we think that the required fact appears in finding 21, and to this we add a finding of fact that the game " Over the Top " is the " Kentucky Derby " game or device. The change in the " flash " and the substitution of figures of soldiers for figures of horses do not change the identity of the game or device. In the appeal for public patronage they are the same game, and in mechanism the same device.

The serious question of law is upon the liability of defendant Reichenthaler to damages for inducing the Kentucky Derby Company, Inc., to break its contract with plaintiff. The question seems to be answered in the negative in *New York Phonograph Co.* v. *Davega* (127 App. Div. 222). To the same effect seem to be *Ashley* v. *Dixon* (48 N. Y. 430), *Daly* v. *Cornwell* (34 App. Div. 27) and *Laskey Feature Play Co., Inc.,* v. *Fox V. Co.* (93 Misc. Rep. 364). These cases hold that a third party who induces one to break a contract is not liable to the other party unless it is done by fraud or fraudulent representations.

Later cases, however, have apparently modified this doctrine, so that, as the law is in its present condition of development, the moral obligation to abstain from interference with a contract between others, referred to by Judge EARL in *Ashley* v. *Dixon* (*supra*) is now a legal obligation, and neither active, as distinguished from constructive, fraud nor fraudulent misrepresentation, is any longer essential to the cause of action.

In *Standard Fashion Co.* v. *Siegel-Cooper Co.* (30 App. Div. 564) the point is slightly touched upon with the assertion of the liability of a third party for inducing the breach of a contract, but not in a reasoned opinion. The case arose on demurrer and was affirmed in 157 New York, 60. *Murphy* v. *Christian Press Assn. Pub. Co.* (38 App. Div. 426), sometimes cited on this point, involves a trespass on property (*i. e.*, a copyright), and, therefore, I do not consider it an authority. However, a direct authority seems to be found in *New York*

*Bank Note Co.* v. *Hamilton B. N. Co.* (83 Hun, 593). The case was subsequently considered in 180 New York, 280, and the opinion, written by CULLEN, Ch. J., approves the proposition that the defendant was liable for inducing the breach of contract, and that without evidence of fraud or false representations. *Posner Co.* v. *Jackson* (223 N. Y. 325) was the case of a third party inducing an employee to break his contract with an employer, and the rule of law is stated as follows: " If a person knowingly and intentionally interfere with the express contract rights of an employer with his employee and the purpose and intent of such interference is to injure such employer and it does result in his injury, an action will be sustained to recover damages therefor." The case upheld the sufficiency of a complaint which alleged that the defendants and others to plaintiff unknown " conspired to and did wrongfully entice said Sarah C. Posner from the employ of the plaintiff and persuaded and induced her to wrongfully break her contract " with the plaintiff.

In *Lamb* v. *Cheney & Son* (227 N. Y. 418), which went up on demurrer to the sufficiency of the complaint alleging that the defendant " maliciously " induced an employee to break his contract with plaintiff, the court upheld the complaint, saying: " In actions of this character the word should be given a liberal meaning. The act is malicious when the thing done is with the knowledge of plaintiff's rights and with the intent to interfere therewith. In a legal sense it means a wrongful act, done intentionally, without just cause or excuse. * * * It does not mean actual malice or ill-will, but consists in the intentional doing of a wrongful act without legal justification."

The finding of fact in the case before us is that the defendant, " in wilful violation of the terms and conditions of the said agreement, and wilfully intending to violate same, and wilfully and maliciously intending to interfere with and injure the rights of the plaintiff under said agreement and renewal thereof, negotiated with the Kentucky Derby Co., Inc." Under the authority of *Lamb* v. *Cheney & Son* (*supra*), the act of the defendant in this case was properly found to be malicious, for the defendant knew about the contract rights of the plaintiff, and the change from horses to soldiers was done with

the intent of evading the provisions of the contract between the Kentucky Derby Company and the plaintiff.

It will be noted that the two cases last cited involved contracts of employment. I am unable to imagine any sufficient reason why the same rule does not apply to contracts of a different nature. Such was the decision in *New York Bank Note Co.* v. *Hamilton B. N. Co.* (*supra*), and such is the opinion of Mr. Justice SCOTT in the First Department in *De Jong* v. *Behrman Co.* (148 App. Div. 37).

The action is in tort for maliciously inducing the Kentucky Derby Company, Inc., to break its contract with the plaintiff. The judgment rightly referred it to a referee to compute damages instead of profits. Profits could be recovered only if defendant Reichenthaler was using plaintiff's property. Such is the basis of awarding profits for the infringement of a patent, over which subject State courts have no jurisdiction. (*Continental Store Service Co.* v. *Clark*, 100 N. Y. 365; *Lamb* v. *Cheney & Son, supra.*) In the " Kentucky Derby " game the plaintiff has no property rights used by the defendant, which this court can consider. The plaintiff's right is simply in the contract with the Kentucky Derby Company and his sole cause of action is in tort for damages for inducing a breach of such contract. As an action at law would not afford an adequate remedy, because the breach is a continuing one, equity has jurisdiction to proceed by injunction to prevent the continuing breach in the future and, incidentally, to award damages for the past.

The judgment is too broad. It should enjoin defendant Reichenthaler only and should not extend to like or similar games nor to the use thereof other than on the Bowery, Coney Island.

The 10th finding of fact must be disapproved, and in place thereof this court makes a finding in the words of the provision of the contract in question.

The judgment and findings should be modified in accordance with this opinion, and the judgment as modified affirmed, without costs.

MILLS, RICH and JAYCOX, JJ., concur; PUTNAM, J., reads for reversal.

PUTNAM, J. (dissenting):

Interference with contract rights first became actionable when the relations of master and servant were involved. Long before *Lumley* v. *Gye* (2 E. & B. 216) New York courts recognized a remedy for harboring servants against one knowing of their relation. (*Scidmore* v. *Smith*, 13 Johns. 322 [1816].) If only such means or inducements as a better offer are used, with no fraud or misrepresentation, one may induce another to break off an existing contract. (*Ashley* v. *Dixon*, 48 N. Y. 430; *Roseneau* v. *Empire Circuit Co.*, 131 App. Div. 429, 434.)

*Posner Co.* v. *Jackson* (223 N. Y. 325) and *Lamb* v. *Cheney & Son* (227 id. 418), relied on in the prevailing opinion, are based on remedies of employers. They come far short of extending such rights to sue to general contracts, such as sales with exclusive covenants.

*New York Bank Note Co.* v. *Hamilton B. N. Co.* (180 N. Y. 280) was a peculiar case. The fraud in that suit was not a mere attribute of a breach of contract. The fraudulent scheme was engineered by a former secretary of the plaintiff, who carried confidential information to the Hamilton Company, and by his negotiations the press was obtained, so that an injunction was there based on substantial grounds.

Furthermore, in the case at bar there was not the identical device, but one wherein the background and scenery of the two games are " entirely dissimilar," as the court has found. If the law here is to follow the Massachusetts decision that there is no difference between enticing a servant, and inducing the breach of any other contract (*Beekman* v. *Marsters*, 195 Mass. 205), this judgment can be affirmed; but I am not prepared to go to that length.

Interlocutory judgment and findings modified in accordance with opinion by BLACKMAR, P. J., and the judgment as modified affirmed, without costs. Settle order on notice before the presiding justice.