## MAGNOLIA PETROLEUM CO. v. SUITS et al.

District Court, W. D. Oklahoma. November 28, 1928.

No. 983.

206

Blakeney & Ambrister, of Oklahoma City, Okl., for complainant.

Fred E. Suits, Everest, Brewer & Dudley, and Allen & Jarman, all of Oklahoma City, Okl., for respondents.

KENNAMER, District Judge. This case arises upon defendants' motion to dismiss complainant's amended bill of complaint. The amended bill charges, in substance, that on February 16, 1912, two of the defendants, G. W. Fyke and L. L. Fyke, were owners of certain lands, definitely described, in Pottawatomie county, Okl.; that on that date, they conveyed 1¼ acres of the land to the trustees of the Union Missionary Baptist Church, the trustees and the church being respondents herein. The instrument of conveyance was the usual form of a warranty deed employed for conveying a fee-simple estate, but the following was inserted in the deed: "This deed is made expressly upon the condition that the said premises herein granted are to be used exclusively for a site for the erection and maintenance of a Church Building for the said Union Missionary Baptist Church and whenever the same shall hereafter cease to be used for such purpose this deed shall become void and the title to the said premises shall revert to the grantors herein, their heirs and assigns."

Complainant's bill further alleged that the conveyance to the trustees of the church was made without consideration and was made upon express agreement that a site for erecting and maintaining a church was to be granted and that the conveyance to the church was for no other purpose; that the church should not have any interest in the oil or gas under the land, but should only enjoy the surface of the land for the erection and maintenance of a church; that on June 13, 1922, the owners of the land, respondents herein, executed and delivered an oil and gas lease to the Magnolia Petroleum Company, a joint-stock association; that the lease has been assigned to complainant, and has been kept in full force and effect by reason of the payment of rentals, as provided in the lease contract; that the lease covered all the premises, including the 1¼ acres conveyed to the trustees of the church, but the lease provided that the operations under the lease should not interfere with the use of the surface for the erection and maintenance of the church; that complainant has commenced operations under the lease by erecting a derrick and starting the drilling of a well; that the lease under which complainant holds was duly and properly recorded, and the trustees knew of the lease and knew of operations in commencing the drilling of a well thereunder.

The amended bill of complaint further alleged that on July 2, 1928, respondents, who are trustees for the Union Missionary Baptist Church, executed an oil and gas lease to the respondents Peters and Suits, covering the 1¼ acres of land conveyed to the church as above mentioned; that the lease has been assigned to the respondents Suits and Holleman; that the lease and assignment have been placed of record; that the last-named respondents are threatening to drill, or cause to be drilled, a well on the 1¼ acres of land; that under its lease requiring the protection of all the premises from drainage, complainant would be required to drill a well offsetting any wells respondents might drill on the said land. Complainant further alleges that the respondents Suits and Holleman acquired no right or interest in or to the oil and gas under the land in controversy, and that the church did not have and could not grant any interest therein; that the trustees of the church had no authority to make, execute, or deliver a conveyance of any of the rights of the church, and that the pretended lease to the respondents was executed without authority and is invalid; that the respondent owners of the land had promised to procure cancellation of the lease upon the 1¼ acres of land, but have failed and neglected to, and refused to join complainant in this action.

It is further alleged that the church, its adherents and trustees, have each known of the lease to complainant and its assignor, and that it covered and included the 1¼ acres of land conveyed for the church site; that a quarterly rental was paid by complainant under the lease, including the 1¼ acres, and this was also known to the church and its trustees; that complainant has expended large sums of money to keep the lease in force, all of which was known to the church, its trustees and members, and that by reason thereof they are estopped from now asserting any right to or interest in the minerals granted by the lease to complainant; that respondents Suits and Holleman have entered upon the premises and are building a derrick and rig thereon and threaten to drill a well on the land; that they are insolvent, in that they cannot respond in damages for the injury arising to complainant by the drilling of a well and the taking of oil and gas therefrom.

The bill further charges that the trustees of the church are without authority to use or to permit the use of the 1¼ acres of land for any purpose other than as a site for the erec-

tion and maintenance of a church, and the complainant is entitled to restrain the respondents from the unlawful and excessive use and misuse of the premises; that the respondent owners of the land have at all times paid the taxes upon the lands, including the 1¼ acres, to the knowledge of the church, its trustees and members, upon the theory that they were the owners of the land, except the mere right vested in the church to use the land as a site for the erection and maintenance of a church. The bill contains the necessary allegations as to citizenship and amount involved to confer jurisdiction upon this court.

The motion to dismiss complainant's amended bill should be overruled and denied for several reasons. The allegation that the trustees of the church had no authority to execute a conveyance of any of the rights of the church, and that the pretended lease was executed without authority, together with other of the allegations, is sufficient for the maintenance of the bill, and as the motion to dismiss admits the truthfulness of the allegations for the purposes of the motion, the motion is not well taken.

Respondents have presented the motion to dismiss upon the theory that the church obtained a determinable fee to the 1¼ acres of land; that the condition inserted in the deed had the effect of creating a qualified or determinable fee, and as the bill disclosed that a church had been erected and maintained upon the land, fee title was vested in the church; and that the use of the premises for production of oil or gas was not an improper use of the lands and would not work a forfeiture of the title. They further contended that the provisions included in the deed amount only to a condition subsequent and create a determinable fee, and that a breach of the condition subsequent, to wit, ceasing to use the premises as a site for a church, would work a forfeiture, but that only the grantor or his heirs could take advantage of the condition broken. I am unable to accept respondents' theory of the case, for, in the first place, no forfeiture is sought in the instant action. Complainant does not seek to divest the church of its interest or right in the 1¼ acres of land; it merely seeks to enjoin the respondents Suits and Holleman from drilling upon the land, to cancel the oil and gas lease executed by the trustees of the church covering the 1¼ acres, and to quiet its title in and to the land described in its lease against the respondents.

It is urged on behalf of complainant that the deed containing the condition and provision above set forth granted to the church an easement or right to use the premises for a site for the erection and maintenance of a church building; respondents insist that more than an easement was granted, and that its effect is to convey a determinable fee. For the purpose of this motion, as well as for the determination of the action, it is not necessary to decide whether the church obtained a title in the nature of an easement, or whether it was granted a determinable fee. The reasons for this conclusion will appear hereafter.

As no forfeiture of the church's title to the 1¼ acres of land is sought, it will not be necessary to consider the authorities presented touching upon the right to declare a forfeiture being limited to the grantor or his heirs. However, the other cases relied upon by respondents are worthy of consideration and analysis.

It appears from a consideration of the special provision found in the deed that it plainly provides a limitation upon the use to be made of the land by the grantees; that is, the grantees are restricted to exclusively use the land for a church site. It is evident from the language employed it was the intention of the parties that the grantors conveyed the land for the exclusive use of building a church house thereon. Restrictions as to the use of land by the grantee are enforced and upheld where expressed in clear and certain terms. 18 C. J. §§ 448, 449.

Counsel for the respondents have cited the case of Williams et al. v. McKenzie, 203 Ky. 376, 262 S. W. 598, as supporting their contention. The facts in this case were: An acre of land was conveyed to the trustees of the common school district No. 8 of Johnson county, Ky., by deed containing the following provision: "It is expressly understood that the aforesaid property is to belong to the aforesaid school district so long as it is used for common school purposes, but whenever the same is no longer so used it is to revert back to the parties of the first part, and the party of the second part is to have the right to remove the school building and fixtures on said premises." The trustees of the school district executed an oil and gas lease upon this land, and the oil company discovered oil. The grantors instituted an action to cancel the deed and the lease so made by the school board and to have the title thereto adjudged in the grantors, and for an accounting for the oil taken therefrom. It was established upon the trial of the cause that since the execution of the deed the land had been continuously used for more than 30 years for school purposes. The Court of Appeals, in reversing the judgment of the trial

court determining the issues in favor of the complainants, said:

"The grantor clearly parted with his whole present interest, and after parting with it engrafts upon the estate conveyed a possible reversionary interest in himself if the property should ever cease to be used for common school purposes, which is manifestly a thing which may or may never happen. The thing which will operate as a reversion in the grantor is and can be only the action of the grantees themselves or their successors in title.

"A qualified or determinable fee is defined in 10 R. C. L. 652, as follows:

"'A qualified or determinable fee is an estate limited to a person and his heirs, with a qualification annexed to it by which it is provided that it must determine whenever that qualification is at an end. Because the estate may last forever it is a fee; and because it may end on the happening of the event it is called a determinable or qualified fee.' .

"Such an estate is defined in 21 C. J. 922, in the following way:

"'Although distinctions have been made or discussed by some authorities, the terms 'base fee,' 'qualified fee' and 'determinable fee' are generally used interchangeably to denote a fee which has a qualification subjoined thereto, and which must be determined whenever the qualification annexed to it is at an end. This estate is a fee, because by possibility it may endure forever in a man and his heirs; yet as that duration depends upon the concurrence of collateral circumstances which qualify and debase the purity of the donation it is therefore a qualified or base fee.'

"Manifestly the estate passing under the deed in question is embraced by these definitions. The grantor parted with all present interest in the property, and conveyed it to the grantees without limitation or restriction of title, with the lone qualification that, if it should ever cease to be used for common school purposes, the title should revert to him. In conveying such a title, with no other limitation or restriction, the grantor not only divests himself of all present title, but places the unlimited and unrestricted use and occupation of the property in his grantee until such time, if ever, the event happens which will determine the estate conveyed. Such an estate, being one which may last forever, is from necessity such as carries with it the unlimited right to use and control the property at all times before the happening of the event which will end the estate."

From a careful consideration of this case, it is apparent the court concluded that the grantor parted with all present interest in the property and conveyed to the grantees without limitation or restriction all title, except the lone qualification that, if it should ever cease to be used for common school purposes, the title should revert. Clearly the provision found in the deed construed and considered by the court is distinguishable from the special clause found in the deed executed by G. W. Fyke and L. L. Fyke to the Union Missionary Baptist Church, wherein the Fykes conveyed the premises "expressly upon the condition that the said premises herein granted are to be used exclusively for a site for the erection and maintenance of a church building." Manifestly it would be unfair to permit the grantees, in view of this plain restrictive clause, to destroy the reversionary interest in the land through mining operations for oil and gas purposes.

Priddy v. School District No. 78, Cotton County, et al., 92 Okl. 254, 219 P. 141, 39 A. L. R. 1334, is relied upon by respondents as being a controlling authority by the Oklahoma Supreme Court. The cited case involved one acre of land, and grew out of the construction to be placed upon the following words found in the habendum clause of the deed: "As long as used for a school house site. If it is ever abandoned as a school house site, said land shall revert to Frank B. Eddy." The admitted facts in the case were that the school district purchased and placed a school building on the site, and has conducted a school in the building at regular intervals at all times. It was further admitted as the facts in the case that the school district granted an oil and gas lease upon the premises, and a producing oil well has been operated on the school site. It was contended that the additional use of the premises for oil production had operated to divest the school district of the title, by the terms of the deed, and to vest the same in the heirs of the grantor. The court said: " * * * The deed provides for forfeiture if the property should be abandoned as a school site, but does not provide for a forfeiture by the additional use of the property. If the additional use of the property for the production of oil constitutes a wrong, the courts of equity of the state have been open at all times for enjoining the wrong complained about, and as equity affords a remedy, the law will not imply a forfeiture for an act for which the parties did not express a forfeiture in the grant. * * * Having arrived at the conclusion that the additional use of the property will

not work a forfeiture, it is immaterial whether or not the acts complained of constitute a misuse, or wrongful use of the property, as the plaintiffs' right to recover in this action depends entirely upon whether or not the acts complained of operated to divest the title from the district and vest same in the plaintiffs." It clearly appears that the Oklahoma Supreme Court recognizes the power of a court of equity to prevent a misuse or wrongful use of premises, and to prevent a use in violation of express conditions or limitations contained in a deed. As the law does not favor forfeitures, the cited case refuses to declare a forfeiture where the deed does not provide for a forfeiture for an additional use, and refuses to imply a forfeiture. In the instant case, no forfeiture is sought, the prevention of a misuse or wrongful use is the purpose of the action, and the equity side of the court is called upon for this relief. In light of the recognition of the powers of a court of equity in such a situation by the Oklahoma Supreme Court, it is well to consider the provisions inserted in the deed in the instant case, with a view of determining whether the trustees of the church and the other respondents are attempting a misuse or wrongful use of the land granted to the church.

The deed recites that it is made expressly upon the condition that the premises granted to the church are to be used exclusively for a site for the erection and maintenance of a church building for the Union Missionary Baptist Church. The language employed is clear and unambiguous, and means precisely what it states. It is capable of but a single construction, and that is that the church is to use the premises for a site for the erection and maintenance of a church building, with the further restriction that there is to be an exclusive use of the premises, viz., as a site for a church building. It may be seen that the case of Priddy v. School District No. 78, supra, was a controversy involving a forfeiture of a title, which is not included in the instant case, and further that the deed considered in the cited case was a fee title, "as long as used for a school house site," and with a reversion clause in the event of an abandonment of the premises for a schoolhouse site. In the Priddy Case, supra, the use of the premises was not restricted, other than containing a condition subsequent as to the use of the premises for a schoolhouse site. The deed, fairly construed, required a use of the premises for a schoolhouse site, but did not limit the use of the premises to the one purpose. In the instant case, the use is limited for a site for a church building, and this limitation upon the use is expressed by the word "exclusively." The development and production of oil or gas upon the $1\frac{1}{4}$ acres of land will constitute a use of the premises other than the exclusive use permitted in the deed of conveyance to the trustees of the church. Without deciding whether the words inserted in the deed limit the estate granted to that of a title in the nature of an easement, certainly the words limit the use to which the premises may be put by the church, for, if the provision constitutes a limitation upon the title, it is quite certain that this action may be maintained, for production of oil or gas from the premises cannot be included in an easement or use for a site for a church building. On the other hand, if the words inserted in the deed do not limit the estate granted but constitute only a condition subsequent, which title might revert upon condition broken, certainly they limit and restrict the use to which the premises may be put, and that is that the exclusive use granted is for a site for the erection and maintenance of a church building.

Another case relied upon by respondents is Phillips Gas & Oil Co. v. Lingenfelter, 262 Pa. 500, 105 A. 888, 5 A. L. R. 1495. The facts are that the owner of 176 acres of land conveyed by deed to the school directors $\frac{1}{2}$ acre of the same, and included in the deed, "for school purposes only." Thereafter, a schoolhouse was erected on the lot, which has been used as such ever since. The owners of the 176 acres of land executed an oil and gas lease upon all of the land, including the $\frac{1}{2}$ acre conveyed to the school directors. Subsequently, the school directors executed and delivered an oil and gas lease on the $\frac{1}{2}$ acre of land, and a well was commenced upon the $\frac{1}{2}$ acre by the lessee holding under the school directors. The lessee of the larger tract instituted an action against the lessee of the $\frac{1}{2}$ acre of land and the school district, praying for an injunction enjoining the drilling of the well upon the $\frac{1}{2}$-acre tract and for an accounting for any oil or gas which might have been produced. The theory of the case was that the oil and gas under the $\frac{1}{2}$-acre tract had not been conveyed to the school district, but remained in the grantor, and passed to the complainant, as the lessee of the oil and gas under the entire 176-acre tract. The question presented to the court was: Did the school district take title to the oil and gas under the $\frac{1}{2}$-acre tract. It was conceded in the case that school directors had capacity to purchase the lot in fee simple, but it was con-

tended that the words in the grant, "for school purposes only," showed that an absolute fee was not to pass. The court said: "Those words are neither preceded nor followed by any condition, restraint upon alienation or clause of forfeiture for any cause, and but for their appearance in the deed, the validity of the lease under which Wearing claims would not be questioned. * * * The directors of the school district could not have purchased the lot for any other purposes than that named in the deed, and their acceptance of it with the insertion in it of the words 'for school purposes only' was a needless admission by them that they were acting within the powers conferred upon them by the act of assembly." Quotations included in the opinion state sound propositions of law, as, "The mere expression of a purpose will not of and by itself debase a fee. * * * Not to limit their own title, but to recognize the uses allowed by law." The above quotations indicate the grounds upon which the cited case was decided. Those grounds and propositions of law are not applicable to the case at bar. The only similarity in the cited case with the case in question is the relief sought. In the instant case, there was not a mere expression of a purpose, or a recognition of the uses allowed by law, but a condition as to the use, and a restriction as to the use; the same being exclusively for a site for the erection and maintenance of a church building.

Dees v. Cheuvronts, 240 Ill. 486, 88 N. E. 1011, considered a deed to one acre of land to school trustees, wherein it was recited: "This deed made to the trustees of schools so long as it shall be used as a schoolhouse site, and whenever it shall be discontinued as a schoolhouse site then to revert to the grantors." After the execution of the deed, the school trustees executed a lease for oil and gas mining purposes to one Kimmel, and it was alleged that the drilling for oil and the removal of it from the land was not using the land for the purpose for which it was granted to the school trustees. The following is found in the opinion of the court: "It is not alleged in the bill or contended in the brief that the land in question is not still used as a schoolhouse site, or that the exercise of the right granted by the lease to Kimmel to go on said land and drill for oil would in any way interfere with such use of the land. Apparently appellees have not filed their bill for the purpose of having this base fee determined by the court on the ground that it had been defeated by noncompliance with the conditions in the said deed. Appellees seek

rather through a court of equity to direct said school trustees and directors as to the use of said property. On this record it must be held that the land is still used for the purposes set out in the deeds and that the title to the estate granted by said deeds is still held by the trustees of schools." The cited case is different on its facts than the case in question, in that a condition subsequent was inserted in the deed to the effect that ceasing to use the premises for a schoolhouse site would work a forfeiture of title or a reversion in favor of the grantor or his heirs. The use of the land was not expressly limited to a site for a schoolhouse in the cited case, and the court construed the deed as permitting other and additional uses, so long as it was also used as a site for a schoolhouse and the other uses did not interfere with the schoolhouse site. In the instant case, the condition included in the deed does not permit another use than as a site for a church building. The deed involved in the cited case called for a construction by the court, and it was declared that the provision in the deed did not limit the use to one thing—as a site for a schoolhouse. In the case at bar, no construction can be made by the court as to the intention of the parties, for clear language has been employed, and the parties have expressly included in the deed what the court in the cited case refused to include in the deed by a construction of the deed involved in that case. In other words, in the case under consideration, the parties so clearly expressed themselves that the land was to be used exclusively for a site for a church, that the case of Dees v. Cheuvronts, supra, is not applicable.

The Supreme Court of Kansas, in School District No. 100, Wilson County, v. Barnes, 110 Kan. 25, 202 P. 849, considered a case in which a school district sought to quiet its title to two acres of land. In the case, there was no deed or instrument of conveyance, but it was established by the proceedings of the school district meetings that a schoolhouse site was acquired. The land was used as a site for the schoolhouse from 1883 to the time of the bringing of the action, or nearly 30 years. It was concluded that there was transferred to the school district the right to the lands for school purposes only. The court said: "The right to occupy land as a place on which to build and maintain a schoolhouse does not carry with it the right to use and occupy land for all the purposes for which a private owner in fee of the land may use and occupy it. Whatever there is about the land for its use or occupancy by others that in any way interferes with its occupancy for

school purposes may be removed, and, when that is done, the rights of the school district are exhausted. The right to occupy land for school purposes carries with it the right to use the land for all purposes connected with the operation of the school. This includes the right to get water, and may include the right to obtain gas or oil therefrom for use in the schoolhouse, but does not include the right to take from the land the gas or oil for general commercial purposes, nor the right to lease the land for those purposes. There is nothing in the evidence or the findings to disclose that, until after oil was discovered in close proximity to the schoolhouse, the district claimed the right to occupy the premises for other than strictly school purposes. It was not shown that the school district claimed the right to occupy the premises for all purposes; therefore it must be held that the district was occupying the land for school purposes only." The case above cited and quoted from is enlightening, but is not controlling of the case under consideration. Complainant's amended bill alleges facts regarding the use and occupancy of the site for the church building, and that no other claim had been made to the 1¼-acre tract, but on the contrary the church had permitted the grantor to pay taxes on the tract, to lease the same for oil and gas to complainant and its assignor, to accept rentals paid by complainant under the lease for the small tract. These allegations are significant, but the provision or condition contained in the deed establishes the use and purpose of the conveyance.

■ Having concluded that the trustees of the church were limited, in the use of the premises obtained from the respondent owners of the large tract of land, to that as a site for the erection and maintenance of a church building, and that leasing the tract for oil and gas mining purposes and the operating of the premises under the lease are in conflict with the provisions or conditions regarding the use, as contained in the deed of conveyance, it is obvious that restrictions with respect to the use of real property may be enforced by injunction. They may be enforced against the trustees of the church, as they were under obligation not to violate the condition or restriction, having accepted the deed or conveyance with such a provision. It may also be enforced against the respondents who seek to operate under the lease, having taken a lease with notice, either actual or constructive, of the limitation. Lewis v. Gollner, 129 N. Y. 227, 29 N. E. 81, 26 Am. St. Rep. 516; 32 C. J. 203, § 315.

■ Complainant may enforce the limita-

tions contained in the deed of conveyance, if the respondent owners refuse to do so, because of its lease, and the injury it will sustain if respondents are permitted to do the acts they are doing and which they threaten to do, as charged in the amended bill of complaint. For the consideration of the case on respondents' motion to dismiss, it is concluded that complainant may maintain its bill, and is entitled to a restraining order as prayed for. At this point, it is not proper to determine what relief complainant is entitled to; that it is entitled to mantain its bill and have a restraining order restraining the respondents from drilling upon the 1¼-acre tract, and further restraining them from taking any oil or gas from the premises, is all that is before the court for determination.

The defendants G. W. Fyke and Laura L. Fyke have filed answer and cross-petition which in effect joins the complainant in its prayer for relief against the other defendants.

It is ordered that the respondents' motion to dismiss complainant's amended bill of complaint and cross-petition of the defendants Fyke be denied; that a restraining order issue as prayed for pending the application for temporary injunction; that exceptions be allowed to respondents, and each of them, to the ruling.