**416** Best Service Wet Wash Laundry Co., Inc., *v.* Dickson.

Supreme Court, August, 1923.                    [Vol. 121

---

Best Service Wet Wash Laundry Co., Inc., Plaintiff, *v.* Irving R. Dickson, Individually and as President of the Laundry Drivers, Chauffeurs and Helpers Local Union No. 810, a Voluntary, Unincorporated Association Consisting of More than Seven Members, and Others, Defendants.

Supreme Court, Kings Special Term, August, 1923.

Injunction — contract between employer and employees — when union may be enjoined from coercing employees to breach their contract of employment — equity.

Where a recovery of damages for a threatened wrong would not afford an adequate remedy a court of equity will restrain the doing of the wrongful act.

Employees who by contract with their employers have bound themselves for a definite period are under both a moral and a legal obligation to perform them, and concerted and coercive action upon the part of a union of which the individual employees are members to procure a violation of such contracts is illegal and will be restrained by injunction.

Where upon a motion for an injunction *pendente lite* in an action brought against the officers of a laundry drivers' union, it appears that the plaintiff and its subsidiary company have contracts with their drivers, all of whom are members of said union, extending over a period of years not yet expired, and it is admitted for want of a denial that the defendants by concerted action attempted to coerce

the plaintiff into refraining from exercising its legal rights under said contracts by ordering a strike of plaintiff's employees, the motion will be granted upon the ground that the acts complained of or the threatened continuance of them are illegal and actionable.

Motion for injunction *pendente lite.*

*Jacob M. Mandelbaum,* for plaintiff.

*William Karlin,* for defendants.

Carswell, J.   This is a motion for an injunction *pendente lite* to restrain the defendants from doing certain acts.   The defendants are officers and representatives of a laundry drivers' union.   The plaintiff itself and or through a subsidiary which it controls have contracts with their drivers which extend over a period of years. All these employees are members of the union.

The injunctive relief sought is (1) to restrain these defendants from combining and conspiring to order these employees to repudiate their several written contracts with the plaintiff or its subsidiary; (2) from sanctioning any act in furtherance of such conspiracy; (3) from giving monetary aid to these employees in an effort to have them breach their contracts with the plaintiff or its subsidiary; and (4) from expelling from the union or disciplining any employees of the plaintiff who persist in carrying out their contracts with the plaintiff or its subsidiary.

Reference hereinafter to the plaintiff includes its subsidiary company.

Briefly the plaintiff claims that the defendants have conspired to have its employees, members of the union, breach their written contracts of employment; have ordered them to do so; have procured the adoption of formal resolutions that they cease to perform under these contracts until certain demands are met; have threatened to discipline such of plaintiff's employees as continue to carry out their contracts or who, having ceased to do so, resume doing so in advance of these certain demands being met by the plaintiff; that the reason that plaintiff has been subjected to having its employees coerced or induced to strike in disregard of their written contracts is that the plaintiff or some subsidiary or allied employer saw fit to enforce by injunction a negative covenant in a contract of employment with one Tepper, who, in attempted violation of his contract, sought to engage in the laundry business in territory and within a period of time where and during which he had agreed not to so engage, if he left his employer's service.

The plaintiff claims that the acts of the defendants were due to a refusal to refrain from prosecuting that action and agree to

**418** BEST SERVICE WET WASH LAUNDRY CO., INC., *v.* DICKSON.

Supreme Court, August, 1923.                    [Vol. 121

refrain from doing likewise against any other individual who similarly breached his contract. They assert that upon their refusal to accede to those demands, among others, the complained of acts of the defendants were indulged in. Some of these accusations against the defendants are denied and others are admitted. The denials that defendants advised the employees and members of the union to breach their contracts or that they gave orders that concerted breach of these contracts should be indulged in by these employees, do not carry much credence. There is no denial that the purpose of such acts of the defendants as were indulged in was to coerce the plaintiff into refraining from exercising its legal rights against individual employees who might breach their written contracts with the plaintiff. The defendants submit a joint affidavit by six of the eighteen employees of the plaintiff who swear that they were not compelled by the union to leave their employment with the plaintiff and that they all left of their own free will for reasons which they specify. These relate (1) to being freed from alleged discrimination because of membership in the union; (2) being freed from assault by gangsters acting on behalf of an employers' association, of which plaintiff is a member; and (3) being freed from the requirement to reimburse customers for lost articles.

All of the plaintiff's drivers belong to the union so that credence cannot be given to the first ground of grievance claimed to have been acted upon. As to the second, plaintiff denies that it had any part in the alleged terrorism and the evidence of this illegal activity is insufficiently brought home to this plaintiff or it does not meet the standard indicated in *Albee & Godfrey Co., Inc.*, v. *Arci*, N. Y. L. J. Aug. 30, 1923, where I denied injunctive relief to an employer as against a union where similar insufficiently established assertions of violence were made against the employees and the union.

As to the third, the dispute with reference to lost articles may represent an honest grievance and might properly be the subject of individual, if not collective refusal to abide by the employer's requirements on such matters, but for the fact that in paragraph 7 of the contract the employee agrees to reimburse his employer and, therefore, until, by lawful means, he obtains a modification of the contract in that particular, he has no legal right to insist upon that feature of the contract being disregarded, although it might well be equitably moderated in its rigor.

Taking the view most favorable to the defendants, however, the charge has been admitted, by reason of it not being denied, that they by concerted action attempted to coerce the plaintiff

into refraining from exercising its legal rights under its contracts with its employees. Defendants have assumed to do so by way of in fact ordering a strike of these employees unless this demand was acceded to. The narrow question then is presented whether or not their acts in doing so or the threatening to continue doing so is illegal and actionable. The employees involved in such action are under contract for definite periods not yet expired with their employer. There is no contractual relation between the union itself (to which the employees belong) and the employer or the association of employers of which the plaintiff is a member. The plaintiff asserts that such conduct by the defendants is actionable. It has been held in an action brought by a labor union against an association of employers that the employers' association and their agents may be enjoined from inducing the employers from breaching their contracts with the labor union entered into on behalf of its members. The principle there invoked by labor against procuring the breaching of contracts with employers by an employers' association, in a manner detrimental to labor is equally available against corresponding procuring of the breaching of contracts with employees by agents of an employees' union which are detrimental to the employers. *Schlesinger* v. *Quinto*, 201 App. Div. 487. The only difference between the two cases is that in the *Schlesinger* case the contracts were between the union and the employers' association acting on behalf of their respective employee or employer members. In this case the several contracts are between the employer and its employees, who are members of the defendants' union, but which union has no contractual relation either with the plaintiff or the employers' association of which the plaintiff is a member.

It is the undoubted right of employees to strike when they are dissatisfied with conditions under which they labor. It is undoubtedly within the power of employees who are under contract with employers to breach their contract for good reasons or none at all, when acting as individuals, but it has come to be held that employees may, by engaging themselves under contract, place limitations upon their right to strike, that is upon their right to act in concert, which they would have a more complete right to do if they were not under contract with their employers. *Schlesinger* v. *Quinto, supra;* *Grassi Contracting Co.* v. *Bennett,* 174 App. Div. 244; *Bossert* v. *Dhuy,* 221 N. Y. 342; *National Protective Assn.* v. *Cumming,* 170 id. 315. In such a case concerted action to breach their contracts, or the acts in concert of third parties to procure a breach of such contracts by ordering a strike in violation of these contracts, becomes illegal and may be restrained.

**420** BEST SERVICE WET WASH LAUNDRY CO., INC., *v.* DICKSON.

Supreme Court, August, 1923. [Vol. 121

This principle has come to be well-settled law and is successfully invoked by one business man against another business man, where a third business man seeks to procure the breach of contracts existing between the complaining business man and another. Such conduct has been held to be illegal, actionable and subject to injunctive relief. *Peekskill Theatre, Inc.,* v. *Advance Theatrical Co.,* 206 App. Div. 138; *Lamb* v. *Cheney & Son,* 227 N. Y. 418; *Posner Co.* v. *Jackson,* 223 id. 325; *Gonzales* v. *Kentucky Derby Co.,* 197 App. Div. 277.

Acts which are illegal when indulged in by third parties with relation to existing contracts between business men or corporations or when indulged in by agents of employers' associations to the detriment of labor unions or their members, are to the same degree actionable and illegal when indulged in by the agents of unions as against employers or employers' associations. The personality of the individuals or the interests on behalf of whom they are acting does not control the decision of whether the acts are illegal and, therefore, subject to being enjoined or whether they are legal and not properly to be enjoined. It is the character of the acts, the effect they have upon existing contract relations between either themselves and another or third parties and another. The principle that has this universal and impartial application has been stated in *Schlesinger* v. *Quinto, supra,* at p. 497, as follows: "It has been repeatedly held that when a person knowingly and intentionally interferes with an express contract between two persons and induces one of them to break that contract, the party injured can maintain an action against the wrongdoer. (*Posner Co.* v. *Jackson,* 223 N. Y. 325, 326; *Lamb* v. *Cheney & Son, supra,* at p. 421.) Such an action is usually to recover damages, because damages ordinarily afford an adequate remedy for the wrong done. But it is well settled that where a wrong is threatened and damages would not afford an adequate remedy, a court of equity will interfere and enjoin the doing of the wrongful act. It is clear that damages to the individual employee would not afford an adequate remedy in the case under consideration."

The fact that the union has no contractual relation with the plaintiff or the plaintiff's employers' association has no controlling force. The controlling query is: Are the acts of any third parties, be they those of a union or any strangers in contract to the plaintiff, such that their purpose is to effect the procuring of a wholesale breach of the contracts of plaintiff and its employees. If that is their effect the acts are illegal and being such may be restrained.

It is not the function of a court of equity to ally itself with either side in a dispute between employers and employees. The employees should not be interfered with in their right to strike and by peaceful

means to seek to bring about its success.   But where the employees have by contract obligated themselves for a definite period, they are as much morally and legally bound to observe their contracts as the employers are correspondingly required and were required to do in the *Schlesinger* case.   Where either the employers or the employees attempt to use illegal means to accomplish their end, they may be restrained.   It having been held at the instance of a union that concerted and coercive action to procure a violation by individual employers of their contracts with their employees may be restrained, the same principle, which has been so applied to the beneficial advantage of employees, must be applied against them where the acts attempted to be indulged in are the same in both instances and violative of contracts in both cases.   What is illegal when indulged in against a union (*Schlesinger Case, supra*) is illegal when indulged in by a union.

The defendants' counsel asserts " in the case at bar to grant an injunction against the union's aid and assistance to their members in a grievance against their employers would deny them the right of collective bargaining which the courts have held they are entitled to."   This is palpably untrue.   That question is not involved in this case at all.   The right of collective bargaining can be exercised whether an injunction issues in this case or not, but when the collective bargaining is indulged in, the contract that evolves and the benefits thereof may not be destroyed by the malevolent acts of others, or by what Justice Holmes has called " disinterested malevolence " in disregard of such existing collective or individual contract rights.   This would be true whether the question be raised against employer or employee.

The extracts from the cases which the defendants rely upon as declaring the rights of employees are sound and are concurred in by me.   But they all relate to situations where the employees were not bound by contracts either of a collective sort or of an individual sort, such as were successfully invoked against the employer by the employees in the *Schlesinger* case and which under the same principle may be invoked against third parties acting on behalf of the employees in this case.

The issuance of an injunction will not interfere with the right of collective bargaining and it will not interfere with any individual (not acting in concert with others) refraining from performing the obligations of his written contract with the employer, leaving the employer to his remedy to proceed under the contract against the employee individually.   It will not interfere with any activity of the defendants that has not been held unlawful when indulged by an employer or employers' association.

**422** Diamond Cravat Co., Inc., *v.* E., S. & B. D. Ins. Co., Ltd.

Supreme Court, August, 1923. [Vol. 121

Therefore, an injunction will issue restraining the defendants from conspiring to direct plaintiff's employees to repudiate their written contracts with the plaintiff or its subsidiaries; from ordering such employees to discontinue their employment under such written contracts; from furnishing money aid to such employees by way, of inducing them to break such written contracts, and from expelling from membership in the union or disciplining employees of the plaintiff who either resume their obligations under their written contracts with the plaintiff or have continued to perform them. Submit order.

Ordered accordingly. _____